PACIFIC NATIONAL FIRE INSURANCE COMPANY *v.* SUIT.

4-6165                                            147 S. W. 2d 346

Opinion delivered January 27, 1941.

*Hal B. Mixon,* for appellant.

*Burke & Burke* and *Burke, Moore & Walker,* for appellee.

HUMPHREYS, J. This suit was brought on the 12th day of September, 1939, in the circuit court of Lee county by appellee against appellant to recover $800 on an alleged renewal contract of a fire insurance policy which was issued to him on March 16, 1938, and which expired on March 16, 1939.

It was alleged in the complaint that several days before the expiration of the original policy its general agent renewed it for the same amount and under the same terms as the original policy for another year and notified appellee to that effect; that upon April 9, 1939, while said policy, as renewed, was in full force and effect and before the premium thereon was due appellee's house and household goods were destroyed by fire; that immediately after the fire appellee notified appellant's agent of the loss and the agent informed him that the

policy, as renewed, had been canceled, and denied liability of appellant thereon. The prayer of the complaint was for a judgment of $800, interest from April 9, 1939, 12 per cent. penalty and attorneys' fee.

The answer admitted that appellant was a corporation, but denied all other allegations in the complaint.

By additional pleading, appellee alleged that appellant notified appellee prior to the fire that the insurance policy had been renewed; that appellee relied on such statement, and by the conduct of its agent, appellant is estopped to deny that said policy was renewed at the time of the loss.

The cause was submitted to a jury, upon the pleadings and the evidence introduced by the parties resulting in a verdict and consequent judgment for $800 principal, $48 interest from April 9, 1939, to the date of the judgment, and the statutory penalty of 12 per cent., amounting to $96, and an attorneys' fee of $125, making a total amount of $1,069, together with costs, from which appellant has duly prosecuted an appeal to this court.

At the conclusion of appellant's evidence and also at the conclusion of all the evidence appellant requested the court to instruct a verdict for it on the ground that the undisputed evidence in the case reflected that appellant was not liable on the alleged renewal contract. The court refused to peremptorily instruct a verdict for appellant, to which refusal appellant objected and excepted.

The undisputed evidence in the case was, in substance, as follows: Appellant was represented in Marianna in Lee county by Hugh C. Mixon Agency, a business owned and operated by Hugh C. Mixon; that the agent had authority to issue, countersign and deliver policies of fire insurance and to collect the premiums therefor; that prior to the year 1933 the agent had written occasional policies of fire insurance for appellee; that such policies always had been issued upon the express application of appellee and the premiums had been paid in cash at the time of the application; that from 1933 until March 16, 1938, there was no business relation-

ship or course of dealing of any character between appellant or its agent and appellee; that in March, 1938, appellee applied for a policy of fire insurance to the Hugh Mixon Agency on his house, furniture, and his barn or storehouse and its contents; that Hugh C. Mixon inspected the property and agreed to write a policy for appellee insuring his house for $600, the household goods for $200, the commissary and contents for $400; that appellee gave his check for $24 in full payment of the premium at the time the application was made, and that the agent prepared and delivered the policy issued by appellant company, covering a period beginning March 16, 1938, and ending March 16, 1939; that no loss occurred during the period covered by the contract; that a short time prior to the date of the expiration of the policy, in March, 1939, the agent, pursuant to a general custom without an application being made and without any communication with appellee, re-issued the policy by preparing a duplicate of the expiring policy which covered the same property in the same amounts, beginning March 16, 1939, and ending March 16, 1940, and placed it in the file in the agent's office; that the agent then placed a printed form of notice in the mail addressed to appellee, the notice stating: "This is to advise you that we have issued new policies for those you have expiring with us on the dates shown below"; that the notice was mailed to and received by appellee prior to the expiration of the original policy, but appellee made no effort to communicate with the agent, pay the premium nor to advise the agent whether he desired the re-issued policy; that the policy remained on file in the office of Hugh Mixon Agency until April 1, 1939, about fifteen days after the original policy had expired, at which time the agent withdrew it from the file and drove out to appellee's home about seventeen miles from Marianna and offered to deliver the policy to appellee's wife upon payment of the premium, appellee himself not being at home; that he left word with her to tell appellee to let him know within a day or two whether he wanted the original policy renewed. Appellee did not let him know whether he wanted it, did not pay the premium or offer to pay same,

so on April 8, 1939, Hugh Mixon indorsed the re-issued policy with the words "Not taken" and on the same day mailed a copy to the rating bureau and the original renewal of the policy to appellant; that on the night of the next succeeding day, April 9, 1939, appellee's house and household goods were destroyed by fire; that at the time of the fire appellee was asked whether he had any insurance and said that he told the inquiring parties that he did not know; that the exact language was, "I just thought it wasn't anything to them (the inquiring parties), and I told them I didn't know." The following Thursday after the fire appellee drove into Marianna and met Hugh Mixon, the agent, in front of a drug store and was told that renewal policy had been canceled and mailed to appellant.

Appellee admitted that he had made no application for the re-issued policy; that he never asked for or received any credit from the agency; that he had not paid the premium; that prior to the fire he had not notified Hugh Mixon whether he desired his property insured for another year; that he had always applied for and paid cash for previous insurance policies and had not established any course of dealings with the Hugh Mixon Agency and that the policy expiring March 16, 1939, had been the only policy written for him by the agent for many years, the last policy written being in 1933; that appellee thought his property was insured by the re-issued policy for the reason that he knew he had thirty days of grace to pay an insurance premium (according to the old insurance law).

The record also shows that the original policy as well as the renewal policy which had been made out and filed contained the following provisions: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation."

It also reflects that when attorneys for appellee were making an investigation before they brought suit Hugh C. Mixon wrote them a letter which contained the following language: "For your information, the renewal policy was canceled prior to the fire at assured's request

and subsequently verified before witnesses by assured."
The record also shows the following excerpts from Hugh
Mixon's testimony:

"Agents have steady customers who do business with
them annually over a long period of time; where agent
is close to them, they depend on agent to look after it
for them; policies are written up usually ten days or
a week before expiration date; he signs policies and ste-
nographer puts them in file; then try to receive some
word from insured whether policy is to be renewed.
Where policy renewed without any request or authority,
that person might come in and pay for policy and so the
policy stays in the office until some decision is made.
The policy can't run on where he doesn't come in or
get in touch with agent; where he comes in and pays
premium, all that is done is to mark the premium paid
and deliver the policy."

Appellee testified that he intended to pay the pre-
mium and take the policy which had been prepared and
filed within the thirty-day grace period.

There was nothing in the policy either the original
or the one prepared and held in the office giving any
grace period of thirty days within which to pay the pre-
mium. This intention on his part was never disclosed to
anyone. There was no custom established between appel-
lant and appellee whereby any credit was extended to
him or any period of time within which to pay the pre-
mium. There was a general custom which appellant ex-
tended to customers who had done business with it for
a long period of time to the effect that he would look
after renewal policies for them and to whom credit was
extended for the payment of the premium on the renewal
policies, but according to the undisputed evidence appel-
lee did not come within that class. He had not done any
business with appellant through its authorized agent
since 1933 until he took the original policy in 1938. What
business he had done prior to 1933 had been upon a
cash basis. He would apply for the policy and pay the
premium when the policy would be issued and delivered
to him. There is nothing in the record to show that he

ever renewed a policy or requested that an existing policy be renewed.

According to the undisputed testimony in this record the policy which he purchased expired on March 16, 1939, and he was notified of that fact, but failed to contact the agent about paying the premium or getting time within which to pay or signifying that he would accept the renewal policy. Appellant could not have recovered the premium from him and force the policy upon him. Not being bound himself to pay the premium, no liability rested upon the company under a renewal policy which he never indicated he wanted. A mere reservation in his own mind that he intended to pay the premium and take the policy within thirty days is not sufficient to recover on a contract which had never been accepted by him.

Contracts must be mutual and a proposed contract which has not been accepted is in no sense a completed contract. It was said in the case of *W. P. Harper & Company* v. *Ginners' Mutual Ins. Co.*, 6 Ga. App. 139, 64 S. E. 567, that: "The acceptance of a proposal of insurance must be evidenced by some act that binds the party accepting. A mental resolution that can be changed is not sufficient. Any appropriate act which accepts the terms as they were intended to be accepted, so as to bind the insurer, is sufficient to show the concurrence of the parties, the meeting of minds." Cooley's Briefs on the Law of Insurance, 421. "Where the proposal to insure comes from the insurer, he must be notified of the acceptance of the offer by the insured." *Id.* 423, 424, 432.

In the instant case appellee did nothing after he received the notice to indicate that he wanted the renewal policy which had been prepared and filed in the office of the agent and never at any time offered to pay the premium until he tendered it in court during the trial of the cause. The most that he did according to his own testimony is that he had made a mental resolution to take and pay for the policy within the thirty-day grace period. A mental resolution is not sufficient to show the acceptance of a policy because he had it within his power to change the mental resolution talked about. There must have

been some act on his part showing that he intended to accept the policy which had been prepared so that he himself would be bound else there was no concurrence of the parties, no meeting of minds. In other words, a mere proposal to renew a policy unless accepted is not binding upon either party. It was said in the case of *New* v. *Germania Fire Ins. Co.,* 171 Ind. 33, 85 N. E. 703, 131 Am. St. Rep. 245, that: "Delivery of a premium renewal receipt without payment merely constitutes an offer to renew and if refused when tendered by the agent, no renewal of liability takes place."

It was said by Cooley in the Briefs on Insurance, §§ 421, 422, that: "The acceptance of a proposal of insurance must be evidenced by some act that binds the party accepting. A mental resolution that can be changed is not enough. Any appropriate act which accepts the terms as they were intended to be accepted so as to bind the insurer is sufficient to show the concurrence of the parties, the meeting of minds."

There is nothing in the record in this case showing that appellee ever accepted the offer of appellant to renew the insurance for a year and without the acceptance of the proposal the contract was not complete and binding upon either appellant or appellee. The act of preparing a renewal policy and filing same in the agent's office and notifying the appellee to that effect amounted to nothing more than an offer or a proposal that it was willing to insure his property, and before there could be any mutuality between appellant and appellee it was incumbent upon appellee to signify by some act that he would accept the offer or proposal. Until there was an acceptance there was no mutuality between the parties, and mutuality between the parties is a necessary essential to a valid binding contract. The mere preparing and filing a renewal fire insurance contract by an agent in his office authorized to represent an insurance company does not estop the insurance company from pleading that the insured had not accepted the contract. As stated above, a mere reservation in the insured's mind that he intended to take the policy and pay for it does not amount to an acceptance.

The trial court should have instructed a verdict for appellant at its request from the record made. On account of his failure to do so, and it appearing that the case has been fully developed, the judgment of the trial court is reversed, and the case is dismissed.