This appeal is prosecuted on behalf of the Superior Merchandise Corporation, plaintiff, from a judgment of the First City Court dismissing its suit.
Plaintiff sued the defendants, Dr. Frank Oser and George Oser, jointly and in solido, to recover the sum of $172.89, alleged to be due for merchandise sold and delivered to defendants. The primary basis of the alleged liability of Dr. Oser is that he had established a prior conduct of business relationship on which the plaintiff had a right to rely, wherein the said George Oser would make purchases from plaintiff for and on behalf and on the account of Dr. Oser.
In the first alternative, plaintiff contends that Dr. Oser and George Oser were conducting a commercial partnership and that the said partners are liable in solido.
In the second alternative, plaintiff seeks judgment against George Oser, individually, for the value of the goods alleged to have been sold and delivered.
Defendants filed exceptions of no right or cause of action, vagueness and of misjoinder of parties-defendant. All exceptions were overruled. The correctness of this ruling has not been questioned before us, either orally or in brief, and, accordingly, we are justified in assuming their abandonment.
For answer, defendant, Dr. Frank S. Oser, averred that during January of 1939 he authorized George Oser to buy from plaintiff one order of merchandise, personally guaranteeing payment thereof, and that said merchandise was paid for by him in full; that thereafter he had no further business dealings with plaintiff, denying that he ever purchased any goods prior thereto or since, or that he ever authorized or guaranteed any purchases either for himself, through another, or for anyone else. Both defendants deny the existence of any commercial partnership and assert that plaintiff is estopped from so claiming since its suit is not leveled at a partnership, nor has service of citation been made on the alleged partnership.
Defendant, George Oser, denies liability for the account sued on and avers that said purchase was made for and on account of some other person within the knowledge of plaintiff.
Trial was had on these issues and judgment rendered in favor of defendants, rejecting plaintiff's demands. Plaintiff has appealed.
At the outset we may say that plaintiff concedes that defendant, George Oser, should be dismissed as a defendant, the latter having been declared and adjudged a bankrupt and finally discharged prior to the determination of this case in the lower court, he having included, in his bankruptcy proceedings, the claim of the plaintiff as an obligation due by him.
It must likewise be conceded that the commercial partnership alleged to have existed between the defendants cannot serve as a basis for liability. It is obvious that, not having sued the alleged partnership as an entity separate and distinct from the partners themselves, and no service of citation having been prayed for or made thereon, no judgment could be rendered against the partnership. In the case of Elfer v. Mintz, La.App.,7 So.2d 416, we quoted from the case of Snyder v. Davison, 172 La. 274,134 So. 89, 91, wherein the Supreme Court said:
"Although the Civil Code, article 2872, declares that the members of a commercial partnership are liable in solido for the debts of the partnership, it is well settled that a member of a commercial partnership is not subject to suit for a debt of the partnership, except as a member of the partnership, and that a judgment cannot be obtained against a member of a partnership for a partnership debt, while the partnership exists, except by obtaining also a judgment against the partnership itself. Smith v. McMicken, 3 La. *Page 772 
Ann. [319], 322; Key v. Box, 14 La.Ann. 497; Wolf v. New Orleans Tailor-Made Pants Company, 52 La.Ann. [1357], 1366, 27 So. 893; Newman v. Eldridge, 107 La. 315, 31 So. 688; E.B. Hayes Machinery Company v. Eastham, 147 La. [347], 352, 84 So. 898, 901."
In Volume 1 of McMahon's Louisiana Practice, at page 191, we find the following:
"Since, under the civil law, a partnership is a legal entity, it is now well-settled in Louisiana that during its existence it is a proper party defendant against whom all actions to enforce rights against the partnership must be brought. So far is this rule carried that it is likewise settled that the members of the partnership cannot be sued on a partnership debt during the existence of the partnership unless joined with the partnership itself."
Hence, the remaining issue presented by the record is the alleged liability of Dr. Oser, predicated upon his having established a prior course of business relationship on which plaintiff was justified in relying, and, in the alternative, that he was the actual purchaser and hence directly responsible therefor.
There is no dispute as to the quality, quantity, or price of the goods. There are likewise no disputed questions of law involved. Certainly, none could dispute that, for a transaction to constitute a sale, "three circumstances concur to the perfection of the contract, to-wit: the thing sold, the price and the consent". Article 2439, R.C.C.
There neither can be dispute about the well-settled principle that, "As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point". Article 1798, R.C.C.
Neither is it questioned that, "He who claims the execution of an obligation must prove it. On the other hand, he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation". Article 2232, R.C.C.
A judgment in this case, of necessity, must rest upon a decision of the facts disclosed by the record. Certainly, if plaintiff has proved that a prior course of conduct of business relationship was established by defendant, Dr. Oser, upon which plaintiff was justified to rely, or, in the alternative, that Dr. Oser was the actual purchaser, it is entitled to judgment. Under the principles aforestated, plaintiff necessarily carries the burden of proof.
The record discloses that Dr. Oser and his brother, George Oser, were members of one or more carnival organizations, in which the former had attained some degree of prominence. Plaintiff was engaged in the business of selling merchandise used by these and other like organizations, such as favors and "throw-outs", which the members, during the parades of the carnival season, throw from the floats to the onlooking crowds. Just prior to the carnival season of 1939, defendant, George Oser, conceived the plan of purchasing these favors, or "throw-outs" for profitable resale to the various members of the carnival organizations, and more particularly to which he and Dr. Oser belonged. It is shown that he called at plaintiff's establishment, priced the goods, obtained samples thereof, and thereafter placed an order for a specified quantity, the price of which Dr. Oser personally guaranteed to pay and did actually pay upon submission of the invoice.
The evidence relied on by the plaintiff, and which is disputed, is that for the next carnival year, specifically on January 17, 1940, George Oser called at its establishment, obtained samples of merchandise, and thereafter again placed an order; that, assuming a continuation of the arrangement had during the previous carnival year, the goods so ordered were charged to Dr. Oser, addressed to him, and delivered to one Murray, an employee of defendant's carnival organization. Upon delivery, these goods were marked as being "unchecked" and placed in the office with packages addressed to other individuals. It is further testified that subsequent thereto Dr. Oser, accompanied by one James Turnbull, called at plaintiff's establishment for the purpose of assisting Turnbull in selecting merchandise; that the president of plaintiff corporation then informed the said Dr. Oser of the selections and purchases made by George Oser for the carnival year 1940, to which Dr. Oser answered "O.K.".
The testimony of Dr. Oser is to the effect that he never had any business dealings with plaintiff other than guaranteeing *Page 773 
the specific single purchase of 1939; that the price of the goods so guaranteed was paid for by him upon receipt of the bill. He further testified that any prior or subsequent purchases made by the said George Oser were unbeknown to him; that at the time he called at plaintiff's establishment with Turnbull it was merely to assist the latter in selecting carnival masks for Turnbull's carnival organization, and in which he had no interest save as a friendly gesture. He denied that plaintiff's president ever mentioned or discussed with him the purchases alleged to have been made by George Oser in January, 1940, nor was there any occasion presented for him to have approved any purchases so made. He stated that not until he received plaintiff's bill did he know that George Oser had purchased goods for the carnival season of 1940, and that he did not receive the goods stated to have been delivered, nor were they used by him; that he ignored the first bill sent to him by plaintiff covering the merchandise sued for and that, on receipt of the second bill, he contacted plaintiff, disclaiming any liability therefor, and giving notice that plaintiff would have to look to George Oser, the purchaser, for payment.
James Turnbull corroborates the testimony of Dr. Oser to the extent that, when he and the Doctor called at plaintiff's establishment, there was no mention of or conversation had regarding any purchases on the part of George Oser, the entire conversation between the parties being confined to the witness' own individual purchases.
George Oser testified that he purchased the goods sued on for his own use and benefit and for purposes of resale to members of his carnival organization; that at the time he purchased the goods in question he did not inform plaintiff's president that the purchases were being made under authority of Dr. Oser, nor that he was acting for the latter. As a matter of fact, nothing was said one way or the other, as to who would be responsible for the price. He states further that he alone is responsible for the bill, having listed, in his schedule of liabilities in the bankruptcy proceedings, the debt herein sued for.
It is evident that the reason for obtaining Dr. Oser's guaranty for the single purchase of George Oser during 1939 was the questionable credit rating of George Oser. It appears that George Oser was then in financial difficulties, and under such circumstances it is not unusual to find such a brotherly gesture as was exercised here by Dr. Oser. The latter's credit rating appears to have been good and plaintiff would naturally seek from him, under such circumstances, a guaranty for its protection. It further appears that plaintiff never had prior dealings with the Osers and that it was upon this guaranty that the sale was effected. It is a matter of common knowledge that the sale and purchase of merchandise for use of carnival organizations is seasonal. The customers are not necessarily continuous, changing from season to season. As a consequence, we are convinced that the purchase of a single order for goods during one carnival season does not justify the assumption that such a purchase constituted the establishment of a prior course of conduct so as to render one liable for purchases under like circumstances during any following carnival years. At the end of a carnival season the books are generally balanced and the relationship existing between the parties is usually considered closed insofar as that particular year is concerned.
The liability of Dr. Oser as a guarantor of the debt sued for is equally without merit. The transaction with George Oser leading up to the sale and delivery of the goods was entirely oral and plaintiff concedes that no guaranty in writing was obtained from Dr. Oser in connection therewith. The preponderance of the evidence is in favor of defendant, showing that plaintiff contracted with George Oser alone. It is well recognized that parol evidence is inadmissible to prove any promise to pay the debt of a third person. Article 2278, R.C.C.
We are convinced, therefore, that in contracting for and selling the goods in question, plaintiff was dealing with George Oser personally, who was acting for himself, and that he alone must be held to be the plaintiff's debtor on said account.
Even if the evidence left us in doubt on these points, we would be inclined to follow the well-known rule that the finding of a trial court on a question of fact should not be reversed except in case of manifest error. We find no error in the judgment of the court below.
For the reasons assigned the judgment appealed from is affirmed, with costs.
Affirmed. *Page 774