## Staunton

JAMES O. BOONE v. STANDARD ACCIDENT INSURANCE COMPANY OF
DETROIT AND C. F. JOYNER, JR., COMMISSIONER, DIVISION
OF MOTOR VEHICLES.

September 5, 1951.

Record No. 3799.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

674

The opinion states the case.

*R. S. Kime* and *W. H. Jolly,* for the appellant.

*Martin, Martin & Hopkins* and *C. R. Langhammer,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On this appeal James O. Boone seeks a reversal of a decree entered in a declaratory judgment proceeding, wherein he was the plaintiff and Standard Accident Insurance Company of Detroit and another were defendants, holding that Boone was not protected by a policy insuring him against liability for bodily injuries and property damage in the operation of his automobile. In that proceeding Boone claimed that a policy issued by the Insurance Company was in effect on February 15, 1949, when the automobile was involved in a collision, as the result of which certain claims for damages had been asserted against him.

The principal facts deducible from the undisputed evidence may be stated thus:

On February 10, 1947, Boone, a resident of Roanoke county, applied verbally to the Standard Accident Insurance Company of Detroit, through C. Preston Brumfield, its agent at Roanoke, for a policy insuring him against liability for bodily injuries

and property damage arising out of the operation of his automobile. The application was accepted, the premium paid in full, and a policy issued and delivered to Boone, covering him for the period of one year beginning February 10, 1947.

Under date of January 26, 1948, Brumfield wrote Boone as follows:

"On February 10 the Public Liability, Property Damage, Medical Payments, and Comprehensive Material Damage Insurance Policy covering your 1937 Terraplane Coach will renew for a term of one year with a premium of $32.85.

"We should like very much to renew this policy for you, and we should appreciate your notifying us that we may send this policy to you.

"Please let us know about this matter at your earliest convenience."

Boone did not reply to this letter until February 21, when he came to Brumfield's office and told him that he desired the policy renewed. At that time he paid $16 on account of the premium of $32.85, promised to pay the balance within thirty or sixty days, and a renewal policy was delivered to him. The balance of the premium was not paid within the agreed time, but was settled in full on May 7, 1948.

This policy, in terms, protected Boone for the period from February 10, 1948, to February 10, 1949.

Under date of January 20, 1949, Brumfield's office filled out and mailed to Boone a "Notice of Expiration" of the policy. This notice was on a printed form in which the italicized words and figures were filled out by a typewriter. The notice read thus:

"NOTICE OF EXPIRATION     THIS IS NOT A BINDER

"C. PRESTON BRUMFIELD & COMPANY

"General Insurance

"510-511 Colonial-American Bank Bldg.   Phone 7891 Roanoke, Virginia

"*January 20, 1949*

"*Mr. James O. Boone*
*R. F. D. 2*
"*Boones Mill, Virginia*

"Please take notice—the policies of insurance listed below
"Insuring *1937 Terraplane Coach*
"will expire as follows:

"Date          Company          Amount

"February 10, 1949     Planet &     $50/100,000 Bodily Injury
                       Standard        Liability
                                    $5,000 Property Damage
                                        Liability
                                    $500 Medical Payments
                                    $300 Fire & Theft

"Renewal premium for the next year with the above change from Comprehensive Material Damage to $300. Fire, Theft and Windstorm Insurance will be $43.82.

"No doubt you will want the policies renewed, but whether you do or not, please advise.

"If any change is desired please notify at once.

"Your patronage is appreciated.

"C. Preston Brumfield & Company"

Boone admitted that this notice was received by him "toward the last part of the month" of January.

In response to this notice Boone went to Brumfield's office on two occasions, February 2 and 7, respectively. Although he did not expressly say so, the fair inference from his testimony is that he intended to tell Brumfield that he desired the policy renewed. However, both of these visits were after five o'clock p. m., and Brumfield's office was closed. Although Boone was then employed as a carpenter in the construction of a building in the city of Roanoke, he did not notify Brumfield, either by telephone or letter, that he desired the policy renewed.

Under date of February 15, 1949, Brumfield wrote Boone as follows:

"We sent you an expiration notice on January 20 in connection with your automobile insurance which expired on February 10. We will hold your policy in our office until February 25 and if we have not heard from you by that time we shall assume that you do not wish the coverage renewed."

This letter was addressed to Boone at his correct mailing address and postmarked at six p. m. on the date it was written. It was received by Boone a day or so later, the exact time being not shown in the record.

In the meantime, on the afternoon of February 15, 1949, "about 5:45 or 6:00 o'clock," while driving the car, Boone was involved in a collision with another automobile. As the result of this collision the other automobile was damaged and one or more of its occupants injured.

On the same night Boone notified the adjuster for the Insurance Company of the accident by telephone. The adjuster talked with Boone on the next day and learned that there was some doubt as to whether the policy had been renewed. In these circumstances he told Boone that he would have to write the home office and ascertain whether he (Boone) was protected by the policy. Before Boone had been apprised of the company's attitude with reference to the matter, he went to Brumfield's offic on February 25, 1949, and tendered the full amount of the premium. Brumfield replied that he could not accept the premium until he had heard from the home office. Shortly thereafter the Insurance Company notified its local representative that it would deny coverage under the policy, and this information was promptly communicated to Boone.

At the time of Brumfield's letter to Boone, on February 15, 1949, Brumfield had in his possession a renewal policy which had been written in the home office, affording coverage on the automobile from February 10, 1949, to February 10, 1950. This policy was complete except for the required countersignature of Brumfield as the local "authorized agent" of the Insurance Company.

Brumfield testified that if Boone had come in within "only four or five days" of the date of the policy, February 10, 1949, and paid the premium, or made "satisfactory terms for its payment," and if the car had not been involved in an accident in the meantime, he would have countersigned and delivered the policy to him.

Brumfield further testified that frequently, before the expiration dates, he wrote renewal policies and mailed them to certain of his customers, with bills for the premiums, without having been actually notified that these customers desired the policies renewed. But, he said, such transactions were confined to those with whom he had done business for a number of years, whose policies he knew would be renewed and whose credit had been established with him. He had had no such dealings with Boone who was among those customers whose policies were not renewed

until the premiums had been paid or satisfactory arrangements made for their payment.

In the trial court Boone made in the alternative two contentions which he claimed afforded him protective insurance:

(1) That the renewal policy for the period of February 10, 1949, to February 10, 1950, although not delivered to him, was in effect; or

(2) That the previous renewal policy, instead of being dated February 10, 1948, and affording coverage for the period of one year therefrom, should have been dated February 21, 1948, the date on which he and Brumfield made arrangements for the payment of the premium, and should have run for a period of one year from the latter date, which would have included the date of the accident, February 15, 1949.

In a written opinion the lower court held against both of these contentions which are reasserted on this appeal.

The appellant's argument in support of the first contention runs thus: When the local agent of the Insurance Company accepted a part of Boone's premium on February 21, 1948, for the policy running from February 10, 1948, to February 10, 1949, and extended him a credit for the payment of the balance, it "entered upon a course of conduct and dealing with Boone" which would reasonably lead him "to believe that prompt payment of the premiums, as they fell due, was not an absolute prerequisite or condition precedent to coverage" under the policy. Moreover, it is said, it does not appear "that the company's agent warned Boone about late payments, or in any way put him on notice that lateness in paying his premiums would not be tolerated and would cause his coverage to lapse."

This reasoning overlooks the basic problem in the case. The fundamental question is not whether Boone had the right to believe from his previous dealings with Brumfield that prompt payment of the premium was not a prerequisite to coverage, but whether there was a meeting of the minds of the parties with respect to the renewal contract of insurance. Stated more specifically the question is, did Boone accept the renewal policy dated February 10, 1949, which the Insurance Company, through its agent, offered to him?

The underlying principle is thus succinctly stated in 44 C. J. S., Insurance, § 232, pp. 968, 969:

"As in the case of contracts generally, it is essential to

the creation of a contract of insurance that there be an offer or proposal by one party and an acceptance by the other. The agreement usually is effected by an offer or application by insured and its acceptance by the company, or else by the tender of a policy by the company and its acceptance by insured. Where the latter method is employed, the fact that the policy is issued without prior application by insured does not prevent its going into effect. A person has a right to accept or reject insurance on terms and conditions fixed by the company; he is under no obligation to accept it, but, where he does accept, a contract exists. Until he accepts it, the policy offered can be withdrawn without his consent.

"Regardless of which party makes the offer or proposal, however, its acceptance by the other party is essential to the creation of the contract, and, when not stipulated otherwise in the offer, is, in the absence of statute, sufficient to complete the contract."

See also, *Haskin* v. *Agricultural Fire Ins. Co.*, 78 Va. 700, 707; *Haden* v. *Farmers, etc., Fire Ass'n*, 80 Va. 683, 694.

Moreover, "The acceptance of a proposal for insurance must be evidenced by some act that binds the party accepting. A mental resolution, that can be changed, is not sufficient. Any appropriate act which accepts the terms as they were intended to be accepted, so as to bind the insurer, is sufficient to show the concurrence of the parties, the meeting of minds. * * *" Cooley's Briefs on Insurance, 2d Ed. Vol. 1, p. 587. See also, 44 C. J. S., Insurance, § 232, p. 976; *Pacific Nat. Fire Ins. Co.* v. *Suit*, 201 Ark. 767, 147 S. W. (2d) 346.

A renewal contract of insurance "must have all the essentials of a valid contract, such as mutual assent and a new consideration." 44 C. J. S., Insurance, § 283, p. 1125. See also, 6 Couch Cyclopedia of Insurance Law, § 1363, p. 4921; 29 Am. Jur., Insurance, § 258, pp. 247, 248; *Trinity Universal Ins. Co.* v. *Rogers* (Tex. Civ. App.), 215 S. W. (2d) 349, 352, 353.

An express acceptance of an offer of renewal is not always necessary but may be implied under some circumstances. A familiar illustration of this is where, in accordance with prior dealings between the parties, the agent writes and delivers a policy to his customer prior to the expiration date and bills him for the premium upon the assumption that in the absence of notice to the contrary the policy will be accepted and the prem-

.ium paid as in the past. Here, failure of the customer to notify the agent to the contrary will signify the customer's implied acceptance of the policy and his promise to pay the premium within a reasonable time. See 6 Couch Cyclopedia of Insurance Law, § 1363, p. 4922.

■ In the absence of circumstances from which an acceptance may be implied, an acceptance will not be presumed from a mere failure to decline a proposal. Cooley's Briefs on Insurance, 2d Ed., Vol. 1, p. 608; *Haskin* v. *Agricultural Fire Ins. Co., supra* (78 Va., at page 707); *Associated Mutuals* v. *Pope Lumber Co.,* 200 Ga. 487, 37 S. E. (2d) 393, 398.

■ In order to bind an insurance company the offer to renew a policy must, of course, be accepted before loss thereunder has occurred. Cooley's Briefs on Insurance, 2d Ed., Vol. 1, p. 678; *Trinity Universal Ins. Co.* v. *Rogers, supra* (215 S. W. (2d) at page 353).

■ Applying these principles to the case before us, it is clear, we think, that there was no acceptance by Boone of the renewal contract of insurance dated February 10, 1949, which the Insurance Company, through its local agent, offered to him. While Boone says that he intended to accept the policy, he did nothing to indicate to the agent such intention or his willingness to pay the premium. Having in no way signified his intention to accept the proposal, Boone was free to change his mind and reject the proposal at any time.

This is not a case in which the offer of coverage was accompanied by a statement that failure to reply would be taken as an assent. On the contrary, the "Notice of Expiration" of January 20, 1949, which Brumfield sent Boone called for a reply or some action on Boone's part signifying his acceptance of the offer and his willingness to pay the premium. "No doubt you will want the policies renewed, but whether you do or not, please advise," the notice said.

Nor did Brumfield say or do anything which would indicate to Boone that an acceptance of the policy and an express agreement to pay the premium would be unnecessary.

There is nothing in the previous dealings between the parties which would indicate to Boone that Brumfield did not expect a reply to his offer to renew the policy. There had been no course of dealing between the parties which would lead Boone to think

that his silence and failure to reject the offer would result in the renewal of the policy.

It is true, as has been said, that Brumfield testified that he had a number of customers for whom he wrote renewal policies and to whom he mailed or delivered them prior to the expiration dates, knowing from their past dealings that the failure of the customers to reject such policies was tantamount to an acceptance thereof and an agreement to pay the premiums thereon. But, as he said, Boone was not such a customer and he had had no such dealings with him.

Only in a single instance, which occurred in February, 1948, had Brumfield previously renewed a policy for Boone. Aside from the fact that a single transaction does not establish a course of conduct or course of dealing,[1] on this occasion the policy had been renewed and delivered only after Boone had come to Brumfield's office, signified his desire to accept the policy, and made satisfactory arrangements to pay the premium.

There was nothing in this conduct on the part of Brumfield to lead Boone to believe that the policy of February 10, 1949, would be renewed until he (Boone) had notified Brumfield of his acceptance of it. Indeed, Boone makes no such claim. There is no suggestion in his testimony that he thought that silence or inaction on his part would result in a renewal of the policy. On the contrary, his conduct shows that he knew that it was necessary that he get in touch with Brumfield and tell him his wishes with respect to the policy, for, as he said, he attempted to do so on two occasions.

It may be that as a result of the previous transaction Boone had the right to believe that prompt payment of the premium was not a condition precedent to coverage under the policy and that he would be granted an extension of time within which to pay the premium if he so desired.

But the payment of the premium and the acceptance of the offer to renew the policy are very different matters. In the absence of an express agreement to that effect, actual prepayment of the premium for the renewal term is not necessary to effect coverage. See 6 Couch Cyclopedia of Insurance Law, § 1366, p. 4929; 29 Am. Jur., Insurance, § 265, p. 251.

---

[1] See *Warkentin* v. *Kleinmachter,* 166 Okl. 218, 27 P. (2d) 160, 163; *Superior Merchandise Corp.* v. *Oser* (La. App.), 8 So. (2d) 770, 773; *Sanders* v. *Chartrand,* 158 Mo. 352, 59 S. W. 95, 97; *Aetna Life Ins. Co.* v. *Kepler,* C.C.A. 8, 116 F. (2d) 1, 6, 7.

On the other hand, the acceptance of an offer to insure is essential to the establishment of a contract between the parties.

It is elementary that insurance contracts must be mutually binding on both the insurer and the insured. If there is no obligation as to one of the parties there is none as to the other. If the insured is not bound to pay the premium, the insurance company is not bound to cover the risk. 44 C. J. S., Insurance, § 231, p. 968; 29 Am. Jur., Insurance, § 132, pp. 148, 149; 1 Couch Cyclopedia of Insurance Law, § 64, pp. 84, 85.

A complete answer to Boone's claim of coverage under the renewal policy, upon which he relies, is the fact that he neither agreed nor did anything to indicate that he was bound to pay the premium thereon. Suppose there had been no accident and in reply to Brumfield's letter of February 15, 1949, Boone had replied that he did not desire the policy renewed, clearly Boone could not have been held liable for the premium. His assertion that he had not accepted the policy or agreed to pay the premium would have been a complete defense to the claim. *Associated Mutuals* v. *Pope Lumber Co., supra.*

Inasmuch as the accident occurred before Boone received Brumfield's letter of February 15, 1949, and he (Boone) was in no way mislead to his prejudice thereby, he makes no claim that it operates as an estoppel against the Insurance Company. At most, this letter merely apprised Boone of the admitted fact that the policy had been written, was in the local agent's hands, and would be delivered upon Boone's acceptance thereof.

The conclusion we have reached is sustained by the following cases which involve quite similar circumstances: *Trinity Universal Ins. Co.* v. *Rogers, supra; Pacific Nat. Fire Ins. Co.* v. *Suit, supra; Associated Mutuals* v. *Pope Lumber Co., supra.*

Little need be said of the second contention of the appellant, that he was protected by the previous renewal policy dated February 10, 1948, because, as he says, it should have been dated February 21, 1948, the date on which he made arrangements for the payment of the premium, and that the policy should have run for a period of one year from the latter date, which would have included the date of the accident, February 15, 1949.

The inception and duration of the risk under a policy or contract of insurance depend upon the agreement of the parties with respect thereto and not upon the time of the pay-

ment of the premium. 29 Am. Jur., Insurance, § 219, pp. 224, 225; *Id.* § 222, p. 226; 44 C. J. S., Insurance, § 329, pp. 1261, 1262.

In the case before us the insured accepted the policy, which stated on its face that it afforded him protection for one year from February 10, 1948, paid the premium thereon, and thereafter both he and the Insurance Company treated it as being effective for this period. There is no evidence whatsoever that there was a mistake in the date of the inception or duration of the risk, as stated in the policy, or that the parties had agreed otherwise. There is, then, no basis for the contention that the policy should have been dated February 21, 1948. Compare 10 Michie's Jurisprudence, Insurance, § 31, pp. 320, 321.

For these reasons the decree of the lower court is

*Affirmed.*