16581

HODGE v. NATIONAL FIDELITY INS. CO.

(68 S. E. (2d) 636)

34

*Messrs. Roy A. Powell and Irvine F. Belser, Jr.,* of Columbia, *and George D. Levy,* of Sumter, *for Appellant* cite:

36

*Messrs. Nash & Wilson,* of Sumter, *for Respondent,* cite:

*Messrs. Roy A. Powell and Irvine F. Belser, Jr.,* of Columbia, *and George D. Levy,* of Sumter, *for Appellant, in Reply,* cite:

January 14, 1952.

OXNER, Justice.

This is an action on an accident policy issued by the National Fidelity Insurance Company to D. G. Hodge on June 10, 1949, in which the insured's wife, Anna Y. Hodge, was named as beneficiary under the clause insuring against death. The question involved is whether the policy was in force at the time of insured's death on July 31, 1950. The case was tried at the April, 1951, term of the Court of Common Pleas for Sumter County. At the close of the testimony offered by the beneficiary, counsel for the insurance company stated that they would offer no testimony and moved for a directed verdict. After some discussion, it was agreed that the jury should be dismissed and all issues of law and fact decided by the Court. Thereafter in an order filed on June 29, 1951, judgment was rendered in favor of the beneficiary for the full amount of the policy with interest, from which the insurance company has appealed.

The material facts are undisputed and are substantially as follows: The Palmetto Automobile Association, hereinafter referred to as the Association, provides various services and benefits to automobile owners for which certain membership dues are charged. Among the benefits furnished each member is a policy of accident insurance, the premium being paid by the Association from a portion of the dues collected. It was arranged that appellant should write this insurance. Under an agreement entered into between the parties, the Association was appointed appellant's agent to receive and accept proposals for insurance and to collect and receipt for the premiums. Appellant agreed to pay to the Association a certain percentage of the premiums collected and allow it to participate in the profits from the business produced. The Association agreed that appellant should write all insurance furnished to its members.

D. G. Hodge became a member of the Association in June, 1949, and incident to such membership, there was issued to him by appellant an accident policy insuring against certain specified losses, including an indemnity in the sum of $1,500-.00 for loss of life resulting from bodily injury received through accidental means. The policy also provided for certain disability and hospital benefits on account of injuries sustained in automobile accidents. It was stated in a rider that the insurance became effective on June 10, 1949, and expired at noon on June 10, 1950. The only other portions of the policy pertinent to this controversy are as follows:

"This Policy is renewable at the option of the Company only and provides indemnity for loss of life, limb, sight or time, by accidental means, to the extent herein limited and provided.

\* \* \*.

"This policy is issued for a term of one year beginning at 12 o'clock noon, Eastern Standard Time, on the Effective Date shown in the attached rider.

\* \* \*

"If this policy be a renewal of an expired like policy, any indemnity becoming payable under Part A shall be in an amount larger than originally provided, as follows: first renewal—original amount plus 10%, second renewal—original amount plus 20%, third renewal—original amount plus 30%, fourth renewal—original amount plus 40% and fifth and subsequent renewals—original amount plus 50%.

\* \* \*

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained.

\* \* \*

"The Company may cancel this policy at any time by written notice delivered to the Insured or mailed to his last address as shown by the records of the Company, together

with cash or the Company's check for the unearned portion of the premiums actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto.

* * *

"This policy is issued in consideration of a paid membership in the Palmetto Automobile Association."

It is conceded that no renewal premium was ever paid on the above policy, which according to its terms expired on June 10, 1950. It is alleged in the complaint, however, that "said expiration date was waived by defendant corporation, the term of said policy being extended and the face amount of said policy was increased by the defendant corporation in the amount of $150.00." In support of this allegation, respondent introduced in evidence a letter mailed to the insured on July 29, 1950, in which there was enclosed a yellow printed slip, as follows:

"Palmetto Automobile Association, Inc.<br>Palmetto Motor Club<br>Headquarters: Hotel Wade Hampton<br>Columbia, S. C.<br>2nd Yr. Ren.

Invoice for membership 6-10-50 to 6-10-51 ....$ 12.50
Amt. Paid ..................................

Bal. Unpaid                                    $ 12.50
County: Clarendon.
D. G. Hodge
Route 1
Manning, S. C.
Please make check payable to Palmetto A. A."
There was also included in the above envelope a pink slip which read:
"Dear Member:
"Your Membership Is In Danger Of Being Cancelled!
"The grace period allowed by our underwriters has almost expired. In order that you might not lose the benefits of

your membership, the value of which has increased to $1,-650.00 Your Auto Association offers you this convenient payment plan.

"Merely fill in the name and address of your bank, sign each check, and return same to us. These checks will not be deposited for payment until the date shown on each.

"Yours for service,

"Palmetto Automobile Association."

Attached to the foregoing slips were three partially completed postdated checks, payable to the Association, aggregating $12.50, the membership fee for one year.

The foregoing letter was taken from the mailbox by the insured about 2:00 P. M. on July 31, 1950. He placed the envelope unopened on a coffee table and about 6:00 P. M., four hours later, was killed in an automobile accident. The letter was subsequently found by his wife.

Mr. Raney, who stated he was the owner of the Association, testified that it was his custom to notify each member three or four weeks before his membership expired and urge renewal; that occasionally credit was extended by the use of postdated checks, but that no membership was ever renewed until the member had either paid his dues or obligated himself to do so; that when this was not done before the expiration date, the insurance policy was dated from the time payment was received or credit arrangements definitely made; that a renewal of the insurance was always evidenced by a new policy; that the policy in controversy was never renewed; and that the statement on the printed slip above mentioned to the effect that insured's policy had almost expired and that he was about to lose the benefits of his membership was sent to him through error.

The Court below concluded that appellant had waived its "right to insist upon a forfeiture of the policy in question by its own conduct and waived the expiration date of the said policy and extended the said policy and coverage thereunder until at least August 5, 1950." Accordingly' judg-

ment was awarded against appellant for the sum of $1,650.00 and interest.

We think the pivotal question in this case is whether there was a valid contract for the renewal of the policy. As in the case of contracts generally, it is essential to the creation of a contract of insurance that there be an offer or proposal by one party and an acceptance by the other. Regardless of which party makes the offer or proposal, its acceptance by the other is necessary to the creation of the contract. *Hydrick v. Rhode Island Insurance Co.*, 131 S. C. 8, 127 S. E. 367; *Keller v. Provident Life & Accident Insurance Company*, 213 S. C. 339, 49 S. E. (2d) 577; 44 C. J. S., Insurance, § 232. The acceptance of a proposal for insurance must be evidenced by some act that binds the party accepting. A mental resolution, that can be changed, is not sufficient. *Keller v. Provident Life & Accident Insurance Co., supra; Boone v. Standard Accident Insurance Co. of Detroit*, 192 Va. 672, 66 S. E. (2d) 530, 535.

A renewal of a term policy is in effect a new contract of insurance and must have all the essentials of a valid contract. "Thus a renewal cannot be effected or consummated without the mutual assent of the parties and a meeting of the minds of the parties on all the essentials of the contract, and a new consideration." 44 C. J. S., Insurance, § 283, p. 1126 and 1127. Of course, there may be an implied acceptance of an offer to renew a policy, but, as stated in *Boone v. Accident Insurance Company of Detroit, supra* "In the absence of circumstances from which an acceptance may be implied, an acceptance will not be presumed from a mere failure to decline a proposal."

In determining whether the policy under consideration was renewed, we must keep in mind the character of insurance involved. We are not here dealing with a policy which is an indivisible and continuous contract for insurance for life or a stated number of years, subject to forfeiture for non-payment of premiums, nor are we deal-

ing with a health or accident policy which is non-cancellable, such as was involved in the case of *Harwell v. Mutual Benefit Health & Accident Association,* 207 S. C. 150, 35 S. E. (2d) 160, 161 A. L. R. 183. The policy here is for a definite and fixed term. It is clearly a species of term insurance. No grace period is provided. It could not be renewed or continued without the consent of both parties; that is, a new contract had to be made. The rights of the parties were mutual in the sense that neither was bound to renew the contract. The fact that certain indemnities in the policy increased each year that the policy was in force gave the insured no right to a continuance of the insurance. *Bowling v. Aetna Life Insurance Co.,* 176 Okl. 405, 55 P. (2d) 1023. It is true that in *Harwell v. Mutual Benefit Health & Accident Association, supra,* a provision in a policy for cumulative benefits was given some consideration in determining whether the policy was non-cancellable, but here the policy is clearly not renewable except with the consent of the insurer. There is no contention that it is non-cancellable.

Considering the question before us in the light of the foregoing principles, it is our conclusion that there was no contract. The enclosures in the letter mailed to the insured on July 29, 1950, constituted merely an offer to renew the policy on the terms therein stated, which was never accepted by the insured. The statement in the letter that "the grace period allowed by our underwriters has almost expired", which was obviously made through error, could not have misled insured for the letter was not opened until after his death. There is no evidence in the record of an agreement to the effect that the Association was to renew the policy each year and bill the insured for the premium, nor does the record disclose a course of dealings between the parties indicating any such understanding. And there is no suggestion that the insured thought that silence or inaction on his part would result in a renewal of the policy.

Suppose there had been no accident and insured had concluded, as he was at liberty to do, not to accept the offer to renew the policy, it would seem clear

that he would not have been liable for the payment of the premium. As succinctly pointed out in *Boone v. Standard Accident Insurance Co. of Detroit, supra,* "If the insured is not bound to pay the premium, the insurance company is not bound to cover the risk." We have not overlooked the fact that an insurer may waive the time and method of the payment of the premium. *Henderson v. Capital Life & Health Insurance Co.,* 199 S. C. 100, 18 S. E. (2d) 605, and cases therein cited. "But the payment of the premium and the acceptance of the offer to renew the policy are very different matters." *Boone v. Standard Accident Insurance Co. of Detroit, supra.* There is nothing in the record showing that assured ever obligated himself to pay the bill for $12.50 enclosed in the letter mailed on July 29th.

The case of *Parry v. Southeastern Life Insurance Co.,* 95 S. C. 1, 78 S. E. 441, although involving a different type of policy, tends to sustain the conclusion reached in the instant case. Our conclusion is also in accord with the following cases from other jurisdictions involving strikingly similar facts: *Boone v. Standard Accident Insurance Co. of Detroit, supra; Trinity Universal Insurance Co. v. Rogers,* Tex. Civ. App., 215 S. W. (2d) 349; *Pacific National Fire Insurance Co. v. Suit,* 201 Ark. 767, 147 S. W. (2d) 346; *Pennsylvania Fire Insurance Co. v. Sorrells,* 23 Ga. App. 398, 98 S. E. 358.

The trial Judge awarded judgment in favor of respondent upon the theory that appellant waived the expiration date of the policy and extended its coverage to a date subsequent to the death of the insured. It is well settled that insurance companies may waive forfeitures and are frequently estopped by their conduct from claiming breaches of conditions in policies. But there is no basis in this case for a claim of estoppel and we do not think that the doctrine of waiver has any application. As we have heretofore pointed out, the contract under consideration is not for an indefinite term like the ordinary life insurance con-

tract under which the insurer is bound to accept timely payment of the premiums, but is a contract for a definite term. We do not have a situation where the insurer is asserting a forefeiture by reason of some condition in the policy. The insurer here denies that there was a contract of renewal. There must be a contract before there can be forfeiture. What respondent is really seeking is not to prevent a forfeiture but to make a new contract. The doctrine of waiver "cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all". 45 C. J. S., Insurance, § 674, p. 617. As stated in *Jones v. New York Life Insurance Co.,* 69 Utah 172, 253 P. 200, 203: "The theory of the waiver of the terms of a contract must necessarily presuppose the existence of a valid contract. Unless and until a contract exists between the contracting parties it would seem to be illogical to contend that either party can be said to have waived any of the terms or requirements of the contract." To the same effect, see *Mahne v. American Fraternal Union,* 216 Minn. 303, 12 N. W. (2d) 615; *Mitchell v. American Mutual Association,* 226 Mo. App. 696, 46 S. W. (2d) 231; *Antone v. New Amsterdam Casualty Co.,* 335 Pa. 134, 6 A. (2d) 566. The distinction now sought to be made was recognized recently by this Court in *Roland v. Colonial Life & Accident Insurance Co.,* 217 S. C. 483, 61 S. E. (2d) 50.

The views set forth herein do not in any way conflict with the case of *Cope v. Jefferson Standard Life Insurance Co.,* 134 S. C. 532, 133 S. E. 440, strongly relied on by respondent. That case involved a life insurance contract and the question for determination was whether the insurer had waived a forfeiture. We do not get to the question of forfeiture in the instant case, for we have concluded that there was no contract of insurance.

We find it unnecessary to pass upon the other questions raised by the exceptions.

The order appealed from is reversed and the case is remanded for entry of judgment in favor of appellant in accordance with Rule 27.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.