17953

TEMPTRON, INC., Appellant, v. The DIXIE FIRE AND CASUALTY COMPANY, Respondent

(127 S. E. (2d) 4)

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Appellant.*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-
ville, *for Respondent,*

August 16, 1962.

BRAILSFORD, Justice.

An automobile belonging to Temptron, Inc., was involved
in a collision on May 20, 1958. Temptron unsuccessfully
defended a suit for damages brought against it by an occu-
pant of the other car, and incurred and paid expenses and
paid the final judgment. Claiming that this loss was cov-
ered by an automobile liability insurance policy, issued by
The Dixie Fire and Casualty Company on April 1, 1958,
in which Ramseur's Inc. and Ramseur Equipment Company
were named insureds, Temptron brought this action against

Dixie to recover $3,084.45. Dixie pleaded that there was no such contract. The circuit court, after hearing argument of motions by both parties for the direction of a verdict, discharged the jury, sustained this plea, and awarded judgment in favor of Dixie. This appeal followed. The controlling question is whether there was a valid insurance contract between these parties on May 20, 1958.

Prior to October 1, 1957, Vardry Ramseur was prominent in the ownership and management of two closed corporations, Ramseur's, Inc., of which he was president, and Ramseur Equipment Company. Ramseur and D. M. Beatty owned all of the voting stock in the latter corporation and Beatty was also active in its management. Beatty had no connection with Ramseur's, Inc. The two corporations operated separate businesses from different locations in the city of Greenville.

At the close of the fiscal year ending September 30, 1957, Ramseur sold all of his interest in the Equipment Company to Beatty and his associates, and the name of the corporation was changed to Temptron, Inc.

Ramseur's, Inc. and Ramseur Equipment Company were the named insureds in an automobile liability policy, which had been issued by Dixie Fire and Casualty Company on April 1, 1957, for a term of one year. This policy was a renewal of an original similar policy issued April 1, 1956, for a like term.

The insurance coverage had been obtained by Vardy Ramseur, Jr. through Norwood Wilkins and Company, an authorized representative of Dixie and of several other insurance companies. Under the terms of the policy, the premium was estimated on the basis of certain declarations, including a list of all motor vehicles owned by the insured on the effective date. The policy provided for an audit at the end of the term and an adjustment of the premium according to certain formulae, which took into account any vehicles acquired or disposed of during the period of coverage. The

estimated premiums were paid in advance to the Norwood agency by Ramseur's, Inc., and the Equipment Company, which had no direct dealings with Dixie or its agent, paid its proportionate share of the premiums to Ramseur's on being billed by it.

As already indicated, the policy which was in effect on September 30, 1957, expired on April 1, 1958. A second renewal policy was mailed to Ramseur's by the Norwood agency, which again named the Equipment Company as an insured and listed two automobiles belonging to it as items 16 and 17 on the schedule of owned automobiles. Upon receipt of this policy, Vardy Ramseur, who had not requested a renewal, notified the Norwood agency that he no longer had any interest in the Equipment Company, then Temptron, Inc., and that he wanted liability insurance for Ramseur's only. An endorsement was issued and attached to the policy by which the name of the insured was changed to "Ramseur's, Inc." Temptron's listed automobiles were eliminated from the schedule and the estimated premium was remitted proportionately. The endorsement was dated May 12, 1958, effective April 1, 1958.

In this action, plaintiff seeks to recover on the policy of April 1, 1958, as a contract covering the loss of May 20, 1958. Plaintiff's contention is that the policy became effective when it was issued by the Norwood agency and mailed to Ramseur's, and that Temptron's status as an insured could not be rescinded without notice to it, nor by an endorsement which was not countersigned. We think that the circuit court was correct in concluding that Temptron never acquired any contractual rights under the policy.

The prior policy was for a definite term, which expired before the loss occurred. Neither party was obligated to renew it. This could be accomplished only by mutual assent. A new agreement, having all of the essentials of a valid contract, including a new consideration, was required. 44 C. J. S., Insurance, § 283, page 1126.

The decision in *Hodge v. National Fidelity Insurance Company*, 221 S. C. 33, 68 S. E. (2d) 636, turned on the question of whether there was a valid contract for the renewal of a term policy. We quote from the opinion:

"As in the case of contracts generally, it is essential to the creation of a contract of insurance that there be an offer or proposal by one party and an acceptance by the other. Regardless of which party makes the offer or proposal, its acceptance by the other is necessary to the creation of the contract. *Hydrick v. Rhode Island Insurance Co.*, 131 S. C. 8, 127 S. E. 367; *Keller v. Provident Life & Accident Insurance Company*, 213 S. C. 339, 49 S. E. (2d) 577; 44 C. J. S., Insurance, § 232. The acceptance of a proposal for insurance must be evidenced by some act that binds the party accepting. A mental resolution, that can be changed, is not sufficient. *Keller v. Provident Life & Accident Insurance Co., supra; Boone v. Standard Accident Insurance Co. of Detroit*, 192 Va. 672, 66 S. E. (2d) 530, 535." 221 S. C. 41, 68 S. E. (2d) 638.

Acceptance by the insured of an offer to renew must include either the payment of the premium or the assumption of an obligation to pay it. "If the insured is not bound to pay the premium, the insurance company is not bound to cover the risk." *Boone v. Standard Accident Insurance Company*, 192 Va. 672, 66 S. E. (2d) 530, 535.

Temptron did nothing which was intended or calculated to obtain a renewal of the insurance policy, either on the former terms or on any terms. Neither Beatty, nor any other representative of Temptron, had any communication about insurance with Ramseur's, Dixie or the Norwood agency until after the accident. Ramseur's was under no obligation to contract for Temptron's insurance and Beatty did not testify that he expected it to do so.

By mailing the policy to Ramseur's the Norwood agency offered to renew it on the former terms. Ramseur's rejected this offer and made a counter-proposal to contract for itself

only. The insurance company accepted and the policy became effective as a contract on the terms of the counter-proposal. Temptron never contracted with Dixie for liability insurance. Ramseur's did not contract for such insurance for Temptron after April 1, 1958. Therefore, Temptron was not covered by the policy on May 20, 1958, when the loss occurred.

If there had been no accident on May 20th and Dixie or Ramseur's had undertaken to collect a premium from Temptron, two complete defenses would have been available to it. First, Temptron had no notice of the proposal for renewal made by the Norwood agency and never authorized Ramseur's to accept in its behalf. Second, Ramseur's did not accept for Temptron and incurred no liability for a premium attributable to it.

The point is emphasized by what Beatty did when it came to his attention on May 22, 1958, before he had actual notice of the accident, that Temptron had no liability coverage; he called the Norwood agency and requested a binder effective on that date, on different terms and at a much lower premium. He did not claim coverage from April 1st and thereby offer to assume premium liability for the intervening period.

We are aware that acceptance of an offer of renewal may be implied, as where the insured fails to notify the agent of his rejection of a policy, which has been mailed to him in accordance with prior dealings between the parties. There are several reasons why this principle is not applicable here.

A single transaction does not establish an effective course of dealing on which an assumption of acceptance may arise. *Boone v. Standard Accident Insurance Co.*, 192 Va. 672, 66 S. E. (2d) 530, 535, and authorities cited in footnote.

Ramseur's had accepted only one renewal policy mailed to it by the Norwood agency and, when that was done, Ram-

seur was authorized to represent both of the corporate in-
sureds and had an interest to protect in both. This situation
no longer existed when the second renewal was offered. The
agent knew of the change and had no reason to assume that
renewal on the same terms was desired.

Finally, Ramseur's did notify the agent that it rejected the
offer to renew. The record does not disclose when this was
done, nor explain the lapse of time between the mailing of
the policy and its amendment to conform to the counter-
proposal. However, this is unimportant because no claim was
made in the lower court, and none is made on this appeal,
that timely notice was not given by Ramseur's, hence, ac-
ceptance should be implied. Instead, plaintiff rests its claim
on the proposition that the policy when mailed was a con-
tract under which it was insured and on which "Ramseur's
*owed* the full premium." Our reasons for reaching a con-
trary conclusion have been stated.

Under the division of their brief entitled THE EFFEC-
TIVENESS OF THE POLICY, counsel for Temptron
state three grounds for holding that the policy "was validly
and effectively issued."

1. A letter from the Norwood agency to Beatty, dated
September 9, 1959, constituted an admission that the policy
was effective.

The short answer to this contention is that it was not
raised in the lower court. Furthermore, none of the rather
long and detailed exceptions assigns as error the failure
of the lower court to give effect to this letter as an admission,
nor refers to it in any way.

2. The *attempted* amendment of the policy shows that
plaintiff was insured, otherwise the amendment would not
have been necessary.

The endorsement was simply a device adopted by the
agent to conform the written policy to Ramseur's counter-
proposal. With like result, the original policy could have
been cancelled and a new, conforming one issued. Since

Temptron did not contract for a renewal of its insurance, the rights of the parties are controlled by Ramseur's refusal to do so. The means which the parties adopted to express their agreement that coverage should be limited to Ramseur's furnishes no evidence that it extended to Temptron. Nor could the failure of the agent to countersign the endorsement put into effect a contract to which the parties never agreed.

3. Defendant admits that Temptron was covered under the 1956-1957 and 1957-1958 policies, "which were issued in the same manner and under circumstances identical to those under which the policy in question was issued."

This proposition is argued at some length in the brief. Ultimately, however, it rests on the mistaken premises that under the course of dealings between the parties, the renewal policy was a contract *ab initio* and that Ramseur's owed the full amount of the premium when it was received through the mail.

Affirmance of the ruling below that there was no contract between Temptron and Dixie has made it unnecessary to discuss all of the points argued in the briefs or raised by the exceptions. However, we have carefully ·considered the entire record and are convinced that the conclusion which we reach is required by the principles stated in *Hodge v. National Fidelity Insurance Company,* 221 S. C. 33, 68 S. E. (2d) 636, and *Boone v. Standard Accident Insurance Co. of Detroit,* 192 Va. 672, 66 S. E. (2d) 530, 535. Temptron may have been disappointed in its expectation that the Norwood agency would not allow its liability coverage to expire without proposing a renewal of it. We express no opinion whether the agency's inaction in this respect was a breach of duty from which remedial rights arose against it or Dixie or both. If so, the remedy is not an action on this policy, which never became effective as a contract between Temptron and Dixie.

Affirmed.

TAYLOR, C. J., and Moss, LEWIS and BUSSEY, JJ., concur.