[Civ. No. 22219.   Second Dist., Div. One.   June 24, 1957.]

ROSEMARY NEGVESKY, Respondent, v. ASTOR ALSTON et al., Defendants; SECURITY INSURANCE COMPANY OF NEW HAVEN, CONNECTICUT, Appellant.

Eugene S. Ives for Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondent.

DRAPEAU, J. pro tem.*—The facts in this case, told chronologically, are as follows:

Astor Alston and Robert Alston, copartners, were selling used cars, and running a garage in Hawthorne, California.

*Assigned by Chairman of Judicial Council.

March 10, 1952, they applied to an authorized agent of Security Insurance Company for a policy of liability insurance that, among other things, would cover any person driving an automobile in their possession and with their consent.

On April 8, 1952, the insurance company issued the policy, which was for one year. On April 9th their agent countersigned the policy and delivered it to the Alstons. The agent was authorized to effect binding insurance by his countersignature on policies.

The agent told the Alstons that the premium was $1,578.31. The Alstons told the agent they didn't have the money to pay the premium just then. The agent then agreed with them that they could pay the premium in three equal installments, over a period of 60 days. The first installment was due April 15, 1952.

In this connection the agent testified:

"Q. Now, at the time that you delivered this policy to him, he told you that his financial situation was such that he would have to set up a schedule of payments because of the fact that he had cars coming in in the future and he would have to make the payments as those cars were disposed of; isn't that correct? A. Correct.

"Q. And you knew from that conversation that the reason he wanted to wait was so that he could get funds in order to pay the premium; isn't that correct? A. Correct.

"Q. And you extended him credit to that extent, didn't you? A. Yes."

On the same day the policy was delivered, April 9, 1952, the Alstons gave Mrs. Marian Corbin permission to drive one of their automobiles, to try it for a day or two, to see if she wanted to buy it. While she was driving the car her husband asked one of the Alstons, in her presence, if they had insurance on their cars. Mr. Astor Alston said, " 'Yes. . . . I have a blanket insurance. . . . It is PL & PD.' . . . Anyone that was driving them was automatically insured."

On the next day, April 10, 1952, while driving this car, Marian collided with a car driven by Rosemary Negvesky, plaintiff in this case.

April 15, 1952, the Alstons paid the first installment on the insurance premium by their check, but the check was returned from the bank marked "insufficient funds." After that the Alstons disappeared, and haven't been seen or heard of since.

May 5, 1952, the insurance company mailed the Alstons a notice cancelling the policy. At the same time the insur-

ance company's bill against the Alstons for the unpaid premium was turned over to a collection agency. This was what is termed in the insurance business a pro rata cancellation.

The fact that it was a pro rata cancellation is revealing evidence that the insurance company at the time treated this policy as an existing valid contract of insurance. ▮ For there are two methods of cancellation, flat and pro rata. With a flat cancellation no claim for a premium is made. With a pro rata cancellation the insurance company demands payment by the insured of the pro rata portion of the premium for the time during which the policy was in force and effect.

Also the insurance company's agent testified that barring some collateral circumstance the policy should be deemed to effect coverage from its delivery until May 10, 1952.

January 14, 1953, Rosemary sued Mrs. Corbin and the Alstons for damages caused by Mrs. Corbin's alleged negligence. The following day the insurance company gave notice of rescission of the policy.

The insurance company was notified of its obligation under the policy to defend the lawsuit, but refused to defend. The case was prosecuted to judgment against Mrs. Corbin for $8,500, and the insurance company refused to pay the judgment.

This case is brought by Rosemary against the insurance company under the provisions of section 11580, subdivision (b) (2) of the Insurance Code. After trial in the superior court, it was found that the policy was in full force and effect on April 10, 1952, and judgment against the insurance company for $8,674.70 followed.

The insurance company appeals from the judgment upon three grounds:

1. That the policy was obtained by fraud and misrepresentation of material facts, and was void *ab initio*.

2. That there was no evidence to support the court's findings XIV and XV. These findings are as follows: XIV. That it is not true (a) that the policy was delivered conditionally, or (b) that there was any condition precedent to said policy going into force or effect, or (c) that as a condition of the policy the premium was to be paid; and XV. That it is not true that the policy was void *ab initio* or that it was not in full force and effect.

3. And that the trial court erred in refusing to admit evidence concerning previous bad checks issued by the Alstons.

70

The insurance company does not dispute the legal rules that when a policy of insurance is issued and delivered under an arrangement whereby credit is extended to the insured for payment of the premium the insurer is liable for a loss occurring during the credit period. (*Hooker* v. *American Indem. Co.*, 12 Cal.App.2d 116, 119 [54 P.2d 1128].) Or that whether or not a policy has been issued on credit is a question of fact. (*Hill* v. *Industrial Acc. Com.*, 10 Cal.App.2d 178 [51 P.2d 1126].) Or that, the policy being in effect, it is immaterial whether or not the insured failed to make payment of the premium. (*Maxfield Wilton & Associates, Inc.* v. *Industrial Acc. Com.*, 19 Cal.App.2d 606, 609 [65 P.2d 1354].)

The insurance company bases its appeal in this case primarily upon the contention that the evidence shows conclusively that the policy was secured through fraud and misrepresentation of the Alstons.

But this was a question of fact for the trial court to determine. It needs no citation of authority to support the fundamental rule of California law that if there is any substantial evidence in the record to support the trial court's finding contrary to the insurance company's contention, it is not within the power of this reviewing court to disturb it.

Without repeating the controlling facts in this case already stated, it is plain from the record that the policy was issued and delivered by the insurance company and was in effect on the day of the accident, that credit was given the insured for payment of the premium, and that the evidence substantially supports the finding against the insurance company's contention of fraud and misrepresentation that they say made the policy void *ab initio*.

While it is of course true that contrary deductions could have been made from the evidence, such deductions under our law are for the determination of the trier of facts. This court's power and function ends when it finds any substantial evidence in the record that will support a finding by the trial court. (*Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231].)

This being the situation in this case, the insurance company's second objection falls, because the findings complained of do no more than restate in negative form the basic finding that the policy was in full force and effect on the date of the accident.

So far as the claim of error in refusing to admit evidence of previous bad checks of the Alstons is concerned, it is

sufficient to say that the exclusion of this evidence does not in any event constitute prejudicial error that would compel this court to reverse the judgment. Moreover, the offer of evidence was to show by the testimony of a police officer of the city of Hawthorne that at the time in question there were several charges against the Alstons for issuing checks without sufficient funds in the bank. At best the offer was of charges only. And it was not shown who kept the records, or what authenticity they had.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.