Joe KUDRNA, also known as Joe Kudina, Plaintiff,

v.

GREAT NORTHERN INSURANCE COM-PANY, a corporation, Defendant and Third-Party Plaintiff,

National Farmers Union Property & Casualty Co., Third-Party Defendant.

Civ. No. 177.

United States District Court
D. Montana,
Billings Division.

Aug. 21, 1959.

Victor G. Koch, Sidney, Mont., for plaintiff.

Cale Crowley, Coleman, Lamey & Crowley, Billings, Mont., for defendant and third-party plaintiff.

John C. Sheehy, Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, Mont., for third-party defendant.

JAMESON, District Judge.

Plaintiff and third-party defendant seek a declaratory judgment determining that an automobile liability policy of insurance written by defendant was a binding contract between plaintiff and

defendant and in effect on October 11, 1957. On that date there was an accident involving the automobile described in the policy.

In September, 1956 plaintiff purchased a used car from First National Bank of Wibaux and in connection with this purchase obtained a policy of liability insurance from the defendant, Great Northern Insurance Company,. through its agent, Wibaux Insurance Agency.[1] This policy was effective for the period September 5, 1956 to September 5, 1957.

On or about August 29, 1957, Ellis Jones, manager of Wibaux Insurance Agency, mailed to plaintiff a renewal policy in Great Northern, together with a statement for the annual premium in the amount of $92.15. This policy recited an effective period of September 5, 1957 to September 5, 1958. Otherwise it was identical with the previous policy. This renewal policy was unsolicited by plaintiff. He testified that he did not want the policy as he could obtain the same or better coverage at less premium from the third-party defendant, National Farmers Union Property & Casualty Company.[2]

On September 24, 1957, plaintiff did in fact obtain a policy from National Farmers Union, effective for the period September 24, 1957 to April 21, 1958. It afforded the same coverage as the renewal policy of Great Northern and its

provisions otherwise were substantially the same.

On or about October 1, 1957, the Wibaux Insurance Agency sent plaintiff a second statement for the premium. On or about October 3, plaintiff wrote the Wibaux Insurance Agency, enclosing a check for $10, payable to First National Bank of Wibaux, upon which was the notation "Ins. Red. Ford." The note transmitting this check was lost or destroyed. Plaintiff and his wife testified that it read substantially as follows: "I am sending you $10.00 to extend on the policy and whenever that $10.00 is used up cancel the policy." According to Jones, the note said in effect: "Please cancel the policy on the 1955 Ford. We have obtained insurance elsewhere. I am enclosing $10.00 to cover expense to you in cancelling the policy."

On October 4, 1957, Jones wrote plaintiff as follows:

"I received your $10.00 check and the attached note to the effect that you did not want to keep the above referenced policy.

"The enclosed envelope is for your use in returning the policy, since it is necessary that the policy be returned to the company before cancellation can be completed. Your cooperation in returning the policy will expedite the cancellation proceedings.

---

1. The original negotiations were handled by Edward Towe, who was president of First National Bank of Circle, Montana, and owner of an interest in First National Bank of Wibaux and Wibaux Insurance Agency. The purchase was consummated through Towe and Ellis Jones, who was an officer of First National Bank of Wibaux and manager of Wibaux Insurance Agency. Jones sold the insurance policy.

2. Plaintiff so testified at least three times in his deposition. After interrogation by counsel for both defendant and plaintiff, he testified on further examination by counsel for defendant as follows:

"Q. You said you were satisfied with the first policy for the time being? A. The first policy from 1956 to 1957.
"Q. Mr. Koch asked you if you were satisfied with the Great Northern Policy, and you said "for the time being" is that right? A. No, I said I was satisfied for the time being, but as I mentioned I could get better coverage for less money.
"Q. You were satisfied with that policy only for the year for which it was written. A. That is right.
"Q. It didn't satisfy your desires for a new policy? A. No.
"Q. It cost you more and you felt it didn't give you the coverage you wanted? A. That is right.
"Q. You had no intention of buying the new policy? A. That is right."

"I want to thank you for the privilege of being able to provide insurance on your car for one year, and regret that I am not able to continue serving you. * * * "

On the back of this letter Mrs. Kudrna wrote the following note to Jones: "When I was cleaning house I must of picked the policy up with other papers and destroyed it. I didn't read it I thought it was an old policy as we were cleaning out some of the old run out policy. Hoping this doesn't inconvenience you too much."

On October 4, 1957, Jones also wrote to Great Northern: "Please cancel the enclosed policy flat, and issue a credit for the full amount of the premium. The insured has notified this agency that he has insured his car with another company, consequently the above policy will not be required. I will attempt to obtain the original copy of the policy from the insured and return it to your office for your records." This letter was received by Great Northern on October 7, and the policy was subsequently marked by the Company as cancelled flat. A policy register kept by the agent shows a cancellation of the policy on October 4, 1957.

As noted above the accident in question occurred on October 11. Plaintiff notified National Farmers Union of the accident, but did not at any time notify Great Northern. When asked why he had not notified Great Northern, plaintiff replied,

"I felt the $10.00 had expired by this time."

On October 12, the Wibaux Insurance Agency paid its bill to Great Northern for the month of September, including a charge for plaintiff's insurance policy, less the agent's commission. On or prior to October 16, Jones learned of the accident and informed Great Northern of it on that date by telephone. At that time Great Northern informed Jones that the policy had been cancelled flat pursuant to the agent's request.[3] The agent's account with Great Northern for the month of November contained a credit of the premium on plaintiff's policy in the amount of $92.15. No notice was ever sent to plaintiff by defendant or its agent that the policy had been cancelled flat, or otherwise. On December 7 the agent sent plaintiff a check for $10, which plaintiff refused to accept and which was not cashed.

The foregoing is a fair resumé of the pertinent testimony. There was no dispute except with reference to the contents of the note sent by plaintiff to Jones on or about October 3, 1957, and as to whether any letters were exchanged between plaintiff and Jones between plaintiff's receipt of the renewal policy and the note of October 3. It was the recollection of plaintiff and his wife that they had written Jones sometime in September requesting a cancellation of the policy and that Jones had informed plaintiff the policy would have to be surrendered to be cancelled.[4] Jones denied receiv-

---

3. On October 16, the agent also wrote Great Northern as follows:

"Enclosed herewith is my file on the above policy. The insured in this case sent me a check for $10.00 to cover any expenses I might have incurred in connection with letting the policy lapse from September 5, 1957 to October 3, 1957. I held the check from date of receipt until October 7, 1957, at which time I deposited it to the Wibaux Insurance Agency Account, with the understanding that I would refund that portion not used by the company in making the cancellation.

"The note that Mrs. Kudina attached to the check was not kept by me, since

I immediately wrote to the G. N. Ins. Co. and cancelled the policy flat, as is evidenced by my letter of 10/4/57."

4. On this point, plaintiff testified:

"Q. It is my understanding about October first of 1957 Mr. Jones sent you a second bill for the premium, do you recall receiving that? A. Yes.

"Q. At that time you had no intention of insuring with him? A. I think I wrote him long before that time and asked him to cancel the policy and I got a letter back and he said he could not cancel until he received the policy. I mislaid the policy some wheres and could not lay my hands on it. We did not know what became of it. Again I asked

ing any letter from plaintiff or answering it.

It is my conclusion that the Jones' version on both points finds more support in the other evidence by reason of the following: (1) Jones' letters to Great Northern dated October 4, 1957 and October 16, 1957, and the entry in the policy register on October 4; (2) Mrs. Kudrna's note to Jones in reply to Jones' letter of October 4; (3) plaintiff's purchase of the new policy on September 24 prior to receipt of the second premium notice from Jones; (4) plaintiff's own repeated testimony that he did not intend to insure with Great Northern and his testimony that he felt "obligated to Jones. It seemed like he was carrying me all this time." In any event, the discrepancy in testimony between plaintiff and his wife and Jones would not affect the result.

The plaintiff and the third-party defendant contend that: (1) a valid contract of insurance was entered into between plaintiff and defendant; (2) the policy was not cancelled according to its terms; and (3) the defendant is estopped to deny the validity of the policy by reason of (a) acceptance of the premium and its retention; (b) refusal to cancel the policy upon the plaintiff's request except upon redelivery of the policy; and (c) acceptance of the $10 on the premium at a time when the policy would have expired under the short rate premium table.

It is the contention of the defendant that: (1) there was no contract of insurance in effect between plaintiff and defendant for the reason that the plaintiff never accepted the policy; (2) at most plaintiff made a counter-proposal for insurance for a period of less than one year; (3) if there was any contract, the premium would be computed at the short rate, and the payment of $10 would not have effected coverage beyond Sept. 16, 1957; and (4) plaintiff requested defendant's agent to cancel the policy and the policy accordingly was cancelled by the insured under the terms of the contract prior to the accident. All of the parties have submitted able and comprehensive briefs.

Was there an acceptance of the insurance contract by plaintiff? "It is elementary that, in order to effect a contract, there must be an offer by one party and an unconditional acceptance of it, according to its terms, by the other." Beale v. Lingquist, 1932, 92 Mont. 480, 488, 15 P.2d 927, 930.[5] An insurance policy is a contract. Weyh v. California Insurance Co., 1931, 89 Mont. 298, 296 P. 1030; Turner, Dennis & Lowry Lumber Co. v. St. Paul F. & M. Ins. Co., D.C.Mont.1923, 290 F. 541. At this point we are concerned solely with the question of whether plaintiff and defendant entered into a contract.[6]

Normally, in insurance cases, the offer is made by application by the insured and acceptance is manifested by delivery of the policy by the insurer. The unsolicited delivery of a renewal policy prior to the expiration of the original policy, as in this case, is not an acceptance, but an offer, and no contract of renewal is created unless acceptance by the insured is expressly made or necessarily inferred.[7] Here the plaintiff did

him to cancel it and it went on and on and I felt obligated to Jones. It seemed like he was carrying me all this time. I thought I would send a check for $10.00 and extend the policy until I could find it and if I could find it then cancel the policy."

5. R.C.M.1947, § 13-321, provides: "Acceptance must be absolute. An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will

conclude the person accepting. A qualified acceptance is a new proposal."

6. This case is clearly distinguishable from those cases where the insured applies for an insurance policy and pursuant thereto a policy is issued and delivered, or, where a renewal policy is delivered and accepted without payment of the premium.

7. See Continental Cas. Co. v. Rosenzweig, D.C.S.D.New York 1952, 105 F.Supp. 253; Trinity Universal Ins. Co. v. Rogers, Tex.Civ.App., 1948, 215 S.W.2d 349;

nothing to manifest his intent to accept the policy. Rather on September 24 he took out a policy of insurance with National Farmers Union, identical with that offered by Great Northern. There is no suggestion that he intended to have two policies in effect. On the contrary, it is clear that the policy issued by National Farmers Union was to replace the coverage offered by Great Northern.

Plaintiff and third-party defendant concede that plaintiff may not "at the beginning" have intended to take out the renewal policy and that after procuring the National Farmers Union policy he indicated that he did not desire to "keep" the Great Northern policy. They argue, however, that he later decided to accept the "continuing offer" of Great Northern and ask for cancellation according to the terms of the policy. I am unable to find any objective evidence of any such intent on the part of the plaintiff. Even under plaintiff's own version of the contents of the note transmitting the $10 check, there was not an unqualified acceptance of the insurance contract. At most plaintiff agreed to take a policy for as long as $10 would pay the premium.[8] This would be a new proposal requiring acceptance by the defendant. Section 13–321, R.C. M.1947, supra. The plaintiff testified repeatedly that he had not asked for, and did not want, the renewal policy but, as he expressed it, he felt "obligated to Jones" because it "seemed like he was carrying me all this time." It is clear from Jones' letters to plaintiff and Great Northern that Jones interpreted the note as a rejection of the policy offered to plaintiff by Great Northern. Mrs. Kudrna's note in reply to Jones' letter is further corroboration of plaintiff's rejection of the policy.

The mere fact that Jones and defendant assumed until October 4 that the policy had been accepted and was in effect, and that plaintiff assumed that he was obligated for a portion of the premium by reason of his retention of the policy and failure to notify Jones that he did not desire it would not change the rule of law that there cannot be a contract without mutual assent.[9] Nor

Associated Mutuals, Inc. v. Pope Lumber Company, 1946, 200 Ga. 487, 37 S.E.2d 393; Hodge v. National Fidelity Ins. Co., 1952, 221 S.C. 33, 68 S.E.2d 636; Vyn v. Northwest Casualty Company, 1956, 47 Cal.2d 89, 301 P.2d 869.

Section 13–608, Revised Codes of Montana, 1947, which provides: "A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent," and cases which hold that possession by the insured of an insurance policy raises a prima facie presumption that the policy is in force have been cited. Neither the statute nor the case law, however, have any application where the contract is in the possession of the party in whose favor it is made by virtue of being an offer rather than the acceptance of an offer.

8. Moreover, mutuality of obligation is necessary to a binding contract. Unless the insured was obligated to pay the premium required by the policy, there is no liability on the part of the insurer. Trinity Universal Ins. Co. v. Rogers, Tex.Civ.App., 1948, 215 S.W.2d 349; Hodge v. National Fidelity Insurance Company, 1952, 221 S.C. 33, 68 S.E.2d

636. In my opinion plaintiff's note and $10 check did not obligate him for the balance of the premium, and the agent's letters to the plaintiff and defendant, and defendant's action in cancelling the policy "flat" prior to the accident would preclude any action by the defendant for the premium. See Negvasky v. Alston, 1957, 152 Cal.App.2d 66, 312 P.2d 728, at page 729.

9. See Richmond v. Travelers Ins. Co., 1910, 123 Tenn. 307, 130 S.W. 790, 791, 30 L.R.A.,N.S., 954, where the facts are very similar to the instant case, and the court said in part: "The fact that the insurance agent entertained the mistaken view of law that the policy was in force, pending the offer of September 2d, until they received George Richmond's letter of September 18th, and that Richmond entertained the same mistaken view, and supposed that he would be held on the premium unless released by the company, did not change the rule of law that there can be no contract without mutual assent, and did not substitute for the ineffectiveness of that delay, in law, the opinions of these persons, or add to that delay an efficiency which the law did not attach to it."

does the use of the terms "cancel" and "cancellation" by plaintiff and Jones effectuate a contract in the absence of an unqualified acceptance of the policy.

■ Plaintiff contends that in any event defendant is estopped to deny that plaintiff accepted the policy, thereby bringing a contract into existence: (1) by reason of acceptance by the agent of the $10.00 and its retention some 57 days after the accident had occurred; and (2) by the agent's refusal to cancel the policy upon the plaintiff's request except upon redelivery of the policy. Many cases have been cited on the question of estoppel or waiver. Most, if not all, involved a condition precedent to the effectiveness of the policy or a forfeiture provision placed in the policy by the insurer for its own benefit. Finding waiver or estoppel by inconsistent conduct under these circumstances is entirely different from finding waiver or estoppel to deny that the contract had ever been accepted by the other party.

It is very questionable whether a contract may be created in the first instance by estoppel. See Gandelman v. Mercantile Ins. Co. of America, 9 Cir., 1951, 187 F.2d 654 and Farmers Insurance Exchange v. Allstate Insurance Co., D.C. E.D.Mich.1956, 143 F.Supp. 213, 215, and cases there cited. But, whether or not a contract may be created by waiver or estoppel, the elements necessary to constitute an estoppel are not here present. In Hustad v. Reed, 1958, 133 Mont. 211, 321 P.2d 1083, 1090, the Supreme Court of Montana held that there were six essential elements for an equitable estoppel, two of which are: " ' * * * (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.' " See also Gandelman v. Mercantile Ins. Co. of America, supra. I am unable to find any evidence that the plaintiff has relied upon any representations of the Great Northern, or its agent, and acted thereon to his detriment, and accordingly conclude that the elements of estoppel have not been established.

■■ If my conclusion that the plaintiff did not accept the renewal policy is justified, a consideration of the question of cancellation is unnecessary. Assuming arguendo, however, that there was an acceptance of the renewal policy, did plaintiff's note of October 3 and tender of the $10 check constitute a cancellation?

The policy provides that it may be cancelled by an insured "by surrender thereof to the company or any of its authorized agents, or by mailing to the company written notice stating when thereafter the cancellation shall be effective." If the insured cancels, the premium is computed in accordance "with the customary short-rate table and procedure."[10] With

10. The cancelation provisions of the policy read:

"15. Cancelation: This policy may be canceled by the insured named in item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the insured named in item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing.

"If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation."

respect to plaintiff's efforts to cancel the policy, counsel argue: (1) that his written notice to the agent to cancel the policy was ineffective because it did not comply with the cancellation provision that if the insured should seek to cancel by written notice, as distinguished from surrender of the policy, this notice must be sent to the company; (2) that he did not state a date thereafter when the cancellation should become effective; and (3) that the letter of the agent to the plaintiff on October 4 shows that the agent was insisting that the cancellation provisions of the policy be strictly complied with; i. e., that the policy be surrendered to him or written notice be given the company, and that the agent refused to accept the notice given to him as effecting a cancellation.

The provisions for notice to the "company" [11] and that the notice shall state when "thereafter" the cancellation shall be effective are for the benefit of the insurer and may be waived by the insurer.[12] Moreover, "the purpose of the provision in the policy requiring that the notice from the insured shall state 'when *thereafter* such cancelation shall be effective,' is * * * merely to forestall a retroactive notice." State Farm Mut. Automobile Ins. Co. v. Pederson, 1947, 185 Va. 941, 41 S.E.2d 64, 68.[13]

Plaintiff contends that "defendant's agent insisted upon surrender prior to giving recognition to cancelation and such surrender was made a condition precedent in the agent's last communication to the plaintiff." In my opinion Jones' letter of October 4 to plaintiff cannot be so construed. It is true he stated that it was necessary that the policy be returned to *complete the cancellation* and that plaintiff's cooperation would expedite the cancellation proceedings. On the other hand he acknowledges receipt of plaintiff's note to the effect that plaintiff did not "want to keep * * * the policy" and expressed regret that he was "not able to continue to serve" plaintiff.[14] Certainly he did not refuse to accept the cancellation notice or inform plaintiff that it did not conform to the policy provisions. I do not believe that the letter may fairly be construed as an insistence that the policy be returned prior to cancellation; nor does Mrs. Kudrna's reply to Jones indicate that she understood the agent's letter to be any rejection of the cancellation notice or an insistence that the policy be returned before cancellation.

Moreover, as set forth above, where a policy is cancelled by insured, the premium is computed according to the "short rate table and schedule". Under plain-

11. Plaintiff's contention that the notice of cancellation to the agent is insufficient is somewhat inconsistent with his reliance upon all other acts and knowledge of the agent as those of the company. See Eicher-Woodland Co., Inc. v. Buffalo Ins. Co. of N. Y., 1941, 198 La. 38, 3 So.2d 268, and State Farm Mutual Automobile Ins. Co. v. Miller, 1953, 194 Va. 589, 74 S.E.2d 145.

12. The party for whose benefit the provision is made may waive it, whether insurer or insured. See 45 C.J.S. Insurance § 452(b) p. 102; Hoover v. Millers Nat. Ins. Co., 1943, 17 Wash.2d 407, 135 P.2d 846; Philadelphia Fire & Marine Ins. Co. v. Board of Education, 1928, 131 Okl. 39, 267 P. 639.

13. Contra, Suennen v. Evrard, 1949, 254 Wis. 565, 36 N.W.2d 685, 8 A.L.R.2d 200. While the Suennen case is not distin-

guishable on the facts, it relies on two prior Wisconsin cases, John R. Davis Lumber Co. v. Hartford Fire Insurance Co., 1897, 95 Wis. 226, 70 N.W. 84, 37 L.R.A. 131 and Gabriault v. Genske, 1935, 219 Wis. 383, 263 N.W. 86, which are clearly distinguishable. Moreover, the court concluded its decision with the comment that in any event the authority of the broker (who gave the notice of cancellation to the company on behalf of the insured) to give notice of cancellation was conditioned on his securing other insurance for the insured.

14. Jones' letter of the same date to the defendant requested a cancelation flat and a "credit for the full amount of the premium", indicating that the policy had never been in effect. He said further that he was attempting to obtain the policy from the insured to be returned for the company's "records".

tiff's testimony, his note transmitting the $10 check requested Jones to "extend on the policy and whenever that $10.00 is used up, cancel the policy." Computing the premium on the basis of the short rate table, the policy would have expired before the accident and, in fact, prior to plaintiff's letter of October 3.

Judgment will be entered for defendant.