433 P.2d 650

**MARYLAND CASUALTY COMPANY,**
a corporation, Appellant,

v.

**George N. WILSON, personal representative
of Marie M. Totten, Deceased, Appellee.**

**No. 2 CA–CIV 411.**

Court of Appeals of Arizona.

Nov. 20, 1967.

Rehearing Denied Dec. 18, 1967.

May, Dees & Newell, by Paul F. Newell, Tucson, for appellant.

Morse & Kain, by Sidney L. Kain, Tucson, for appellee.

MOLLOY, Judge.

In the lower court, plaintiff (appellee Wilson) brought a declaratory judgment action to determine the defendant's (appellant Maryland Casualty Company's) liability under a "comprehensive automobile liability policy."

Plaintiff's deceased, Mrs. Marie Totten, was an employee of the Arizona Game and Fish Department, and was, at the time of the accident, a passenger in a vehicle owned by that department. The collision which caused the death of the plaintiff's deceased involved the Game and Fish vehicle and a car driven by one Ochoa, now deceased, an uninsured motorist.

One of the principal questions presented is whether the State of Arizona and its departments are authorized to expend public funds to provide a form of insurance to employees of the State who may be injured by an "uninsured motorist." The trial court granted the plaintiff's motion for summary judgment, and the defendant-insurer appeals.

Most pertinent to this cause is the following statutory provision:

"On and after January 1, 1966, no automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in § 28–1142, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. This coverage shall at the time the policy is issued be called to the attention of the named insured who shall have the right to reject such coverage. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."

A.R.S. § 20–259.01, as amended.

On the first of July, 1966, the defendant issued an automobile liability policy to the Game and Fish Department without an uninsured motorist endorsement, for the policy period from July 1, 1966, to July 1, 1967. This was a renewal of a previous policy which did not have uninsured motorist coverage. When the policy was delivered, the Game and Fish Commission was provided with a "rejection of protection against uninsured motorist" form and requested to return the signed form if such protection was not desired. On July 11, 1966, the form was returned, unsigned, with a declaration that such coverage *was* desired.

The accident which resulted in the death of plaintiff's deceased occurred on July 4, 1966. On August 2, 1966, defendant issued the standard coverage endorsement for the uninsured motorist protection to the Game and Fish Department, together with an invoice for the premium due for the coverage. The effective date of the uninsured motorist endorsement was July 1, 1966.

On September 28, 1966, the Arizona State Auditor informed the Game and Fish Department that the purchase of the uninsured motorist protection was not "an allowable expenditure of funds." On September 30, 1966, the Game and Fish Department executed and returned the form rejecting protection against uninsured motorists.

The "named insured" of the subject automobile policy reads as follows:

"State of Arizona for the Arizona Game and Fish Commission, its officers, commissioners and employees (including

while on governmental or proprietary functions)."

The plaintiff's deceased was, at the time of the accident, an employee of the Game and Fish Commission and the appellant does not question that plaintiff's deceased was in the course of her employment as such at the time of this accident.

■ We arrive at the conclusion that the State is authorized to provide the subject insurance coverage through a construction of the following statutory language:

"The state and the boards, departments and agencies carrying on any of the functions thereof may expend public funds to procure liability insurance covering their officers, agents and employees while employed in governmental or propietary capacities."

A.R.S. § 38–641.

We believe the coverage contemplated by the words "liability insurance" in this statute to be that coverage normally included in standard liability policies issued in this state. When adopted, this may not have included uninsured motorist coverage, but after the adoption of A.R.S. § 20–259.01, we believe the picture to be radically changed.

We read A.R.S. § 20–259.01 to be an expression of strong legislative policy in favor of uninsured motorist coverage. We can conceive of few ways to express this policy in stronger language. After the effective date of this act, liability insurance on motor vehicles with uninsured motorist coverage became the *only* standard liability policy on motor vehicles issued in this state. There is nothing in the act suggesting that there is any duty on the State or any other public body to reject this coverage. In our view, the purchasing of this standard liability policy by the State was authorized by A.R.S. § 38–641.

We proceed to consider whether the uninsured motorist coverage was properly rejected as permitted by the act in this case. The statute provides that the "named insured" may reject such coverage. It has been assumed in the briefs filed in this court that the State may reject such coverage, though there were numerous insureds, including the plaintiff's deceased, in addition to the State, named in this policy. Finding it possible to affirm on the basis of the briefs submitted, we do not pass upon whether the rejection of the uninsured motorist coverage by the plaintiff's deceased was necessary in order to deprive her of such coverage.

■ We believe it to be dispositive here that the State did not reject this coverage prior to a loss covered by the policy. The original issuance of this policy without the uninsured motorist coverage was a violation of the express requirements of A.R.S. § 20–259.01. The subsequent issuance of the uninsured motorist endorsement only put into the express language of this contract what the law had already placed there. Jenkins v. Mayflower Ins. Exchange, 93 Ariz. 287, 380 P.2d 145 (1963).

■ What effect could the rejection of the pertinent coverage by the State have upon the coverage provided by the policy for a loss occurring before such rejection? We answer this question by an application of the general law that after a loss covered by an existing policy of insurance, there is a vested right in those provided coverage which cannot be abrogated by agreement or other conduct in which the person suffering such insured loss did not join. Shapiro v. Republic Indem. Co. of America, 52 Cal.2d 437, 341 P.2d 289 (1959); 29 Am.Jur. Insurance § 381, at 731–32; 9 Couch on Insurance 2d § 39:204, at 560; and see Zimmerman v. Union Auto. Ins. Co., 133 Or. 600, 291 P. 495 (1930). We hold that the rejection of this policy by the State on September 30, 1966, had no effect on the vested rights of the plaintiff's deceased to coverage for the accident occurring on July 4, 1966.

■ The fact that the stated premium had not been paid is of no moment, because extension of credit, allowing payment of the premium subsequent to the inception of the policy's coverage, does not affect or alter

the effective date of the policy. Western Cas. & Surety Co. v. Lund, 234 F.2d 916 (10th Cir.1956); Negvesky v. Alston, 152 Cal.App.2d 66, 312 P.2d 728 (1957); and see, e. g., Cummings v. New England Ins. Co., 266 F.2d 888 (5th Cir.1959); Mahon v. State Farm Mut. Auto. Ins. Co., 36 Ill.App. 2d 368, 184 N.E.2d 718 (1962); Paul v. Dwyer, 410 Pa. 229, 188 A.2d 753 (1963).

Judgment affirmed.

HATHAWAY, C. J., and JOHN A. Mc-GUIRE, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.