Appellant Merchants Business Men's Mutual Insurance Company ("MBI") appeals the decision of the Stark County Court of Common Pleas that determined Appellee Eugene Ruegg did not cancel his insurance coverage with MBI prior to an accident that occurred on July 12, 1996. Appellant MBI also appeals the trial court's decision awarding attorney fees to Northland Insurance Company ("Northland"). The following facts give rise to this appeal.
In 1996, Appellee Eugene Ruegg had in effect a policy of insurance with MBI and Grange Mutual Insurance Company to cover his multi-vehicle trucking business named E.R. Trucking, Inc. As the expiration date of the Grange Mutual Insurance Company's policy approached, Appellee Ruegg decided to allow the Grange policy to expire, cancel his policy with MBI and obtain coverage, under a single policy, issued by Northland. Appellee Ruegg sought coverage for all his vehicles, under one policy, to be in compliance with the Public Utilities Commission of Ohio's regulation which requires trucking businesses operating in Ohio to have all vehicles covered by a single insurer. See4901:2-13-04.
On June 24, 1996, Appellee Ruegg purchased a $1 million Northland policy covering all the vehicles used by E.R. Trucking, Inc. The term of that policy was from June 24, 1996 through June 24, 1997. At the time Appellee Ruegg purchased this policy from Northland, six weeks of coverage remained on his policy with MBI, which was scheduled to expire on August 6, 1996. Therefore, on June 26, 1996, two days after Appellee Ruegg purchased the new policy from Northland, he telephoned the Lynch Insurance Agency, where he purchased the policy from MBI, and requested cancellation of the MBI policy.
The MBI policy contains the following provision concerning cancellation in the "Common Policy Condition" provisions:
A. CANCELLATION
 1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering it to us advance written notice of cancellation.
* * * *
 4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
 5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
The above provisions are modified by an endorsement to MBI's policy entitled
"OHIO CHANGES — CANCELLATION AND NONRENEWAL" These provisions are as follows:
 A. With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the CANCELLATION Common Policy Condition is replaced by the following:
 1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
* * * *
 5. a. The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
 b. The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.
* * * *
 4. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
Immediately following his request to cancel on June 26, 1996, Cherrie Thomas, of the Lynch Agency, sent a letter to Appellee Ruegg enclosing a "Cancellation Request/Policy Release Form" for him to sign. The letter requested Appellee Ruegg to sign the "Cancellation Request/Policy Release Form" and return it to Cherrie Thomas at the Lynch Agency. The "Cancellation Request/Policy Release Form" contained the following language:
 No claims of any type will be made against the Insurance Company, its agents or its representatives, under this policy for losses which occur after the date of cancellation shown above. Any premium adjustment will be made in accordance with the terms and conditions of the policy.
Also on this date, Cherrie Thomas faxed a letter to Lori at Great Lakes requesting cancellation of MBI's policy effective June 26, 1996. Appellee Ruegg signed the "Cancellation Request/Policy Release Form" but failed to date his signature. However, Cherrie Thomas testified, at her deposition, that she received the signed form back from Appellee Ruegg and mailed it to Bank One, Dover, the loss payee, on July 5, 1996. Although not stated in the policy issued by MBI, its cancellation procedure also required any loss payee to sign a policy release before cancellation would be honored. Therefore, in the casesub judice, Bank One, Dover, had to sign a policy release before Appellee Ruegg's policy could be canceled with MBI.
Bank One, Dover, did not sign the policy release before the accident in this matter which occurred on July 12, 1996. At the time of the accident, Appellee Ruegg was operating a 1991 International truck, one of the vehicles covered by MBI's policy. The truck operated by Appellee Ruegg struck a line of vehicles stopped at a railroad crossing. As a result of the collision, seven-year old Ashley Wolgamott was killed. Appellee Ruegg told the investigating officer that his insurance coverage was through Northland.
Three days after the accident, on July 15, 1996, Cherrie Thomas received a telephone call from Margaret at Bank One, Dover. Margaret informed Cherrie Thomas that Bank One, Dover, would not sign the policy release because Appellee Ruegg still owed money on the truck the bank had financed. Thereafter, on July 19, 1996, Cherrie Thomas spoke with Susan, of Great Lakes, who informed her that if Bank One, Dover, would not return a signed policy release, MBI's policy would have to expire on the expiration date contained in the policy rather than being canceled prior to that date.
Also on July 19, 1996, Cherrie Thomas mailed a letter to Appellee Ruegg. This letter stated:
 Please be advised that your 6/26/96 cancellation request for the above referenced policy can not be enacted without the sign-off from your loss payee, Bank One, Dover.
 The loss payee has informed our office that they are not able to sign the cancellation request form because you still owe on the tractor.
 If you still wish to proceed with the policy cancellation, you will need to complete payment of the vehicle. Otherwise, your policy will remain active until the 08/06/96 expiration date.
Further, on October 7, 1996, Jim Lynch, of the Lynch Agency, mailed a letter to Lori, at Great Lakes, which stated:
 Eugene RUEGG had requested cancellation effective 6-26-96, and he took coverage from NORTHLAND effective that date. We sent form [sic] to him to sign plus the loss payee and faxed to you a copy and the signed copy was not returned.
 It appears he had dual coverages during this period and/or until expiration of his policy 8-6-96.
In November 1997, one and one-half years after Appellee Ruegg requested cancellation of MBI's policy, Bank One, Dover, signed and returned the policy release. After Bank One, Dover, signed the policy release, MBI gave Appellee Ruegg a partial refund of his premium. Appellee Ruegg did not accept the partial refund.
Northland filed a complaint for declaratory judgment on February 7, 1997, naming the following defendants: MBI, Appellee Ruegg, Appellee E.R. Trucking, Inc. and Appellees Jason and Kelli Wolgamott. Northland contends in its complaint that MBI owes coverage to Appellee Ruegg on the loss and that MBI shares in Northland's liability on the third-party claim arising out of the accident. Appellee Ruegg filed a cross-claim against MBI. The trial court bifurcated the cross-claim from Northland's complaint.
Northland and MBI filed cross motions for summary judgment. On June 17, 1998, the trial court granted Northland's motion for summary judgment and denied MBI's motion. Subsequently, on July 1, 1998, Northland and Appellee Ruegg filed motions for attorney fees. Appellee Ruegg dismissed his cross-claim and withdrew his motion for attorney fees on July 13, 1998. On July 14, 1998, MBI filed its notice of appeal.[1] The trial court stayed its ruling on Northland's motion for attorney fees until after the resolution of MBI's appeal.
Thereafter, Northland moved this court for an order of remand for the trial court to address its motion for attorney fees. We granted Northland's motion. On August 13, 1998, the trial court granted Northland's motion for attorney fees. On September 1, 1998, MBI filed its notice of appeal from the trial court's judgment entry of August 28, 1998.[2] We consolidated the appeals on September 18, 1998.
Appellant MBI sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN GRANTING THE SUMMARY JUDGMENT MOTION OF NORTHLAND INSURANCE COMPANY AND HOLDING THAT THE INSURANCE POLICY OF MERCHANTS AND BUSINESS MEN'S MUTUAL INSURANCE COMPANY WAS IN EFFECT AT THE TIME OF THE LOSS.
 II. THE TRIAL COURT ERRED IN SUSTAINING THE MOTION OF NORTHLAND INSURANCE COMPANY FOR ATTORNEY'S FEES WHERE (A) THERE WAS NO CONTRACTUAL RELATIONSHIP BETWEEN NORTHLAND INSURANCE COMPANY AND MERCHANTS AND BUSINESS MEN'S MUTUAL INSURANCE COMPANY (MBI), (B) MBI DID NOT INITIATE THIS LITIGATION, AND (C) THERE WAS NO SHOWING OF BAD FAITH BY MBI.
 Summary Judgment Standard
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citingDresher v. Burt (1996), 75 Ohio St.3d 280.
It is based on this standard that we review appellant's First Assignment of Error.
 I
In its First Assignment of Error, Appellant MBI maintains the trial court erred in determining its policy of insurance was in effect at the time of the accident. In support of this assignment of error, MBI argues Appellee Ruegg canceled the policy in accordance with the terms of the policy before the accident. MBI also contends the cancellation was effective even though MBI had not finished processing the cancellation and had not issued a premium refund. We disagree with both arguments.
In Ohio, it is well-established law that "[i]n the absence of legislation the rights of the parties on cancellation of an insurance policy pursuant to its terms are as fixed by the contract as set forth in the policy." Gibbons v. Kelly (1951),156 Ohio St. 163, paragraph two of the syllabus; Lewis v.Motorists Ins. Cos. (1994), 96 Ohio App.3d 575, 583; Canter v.Christopher (1992), 80 Ohio App.3d 465, 467.
The terms of MBI's policy and endorsement to the policy, concerning cancellation, provide as follows:
 1. Written notice of cancellation delivered to MBI in advance.
 2. Notice of cancellation must state the effective date of cancellation.
 3. The policy period will end on the effective date of cancellation contained in the notice of cancellation.
 4. The cancellation is effective even if a refund is not offered or made.
 5. The cancellation notice must contain the date of the notice, policy number and state the reason for cancellation.
MBI maintains, despite the above requirements contained in its policy of insurance and endorsement, that Ohio courts follow the general rule that an insurer's receipt of an insured's cancellation notice is effective to terminate coverage. See Turner v. Progressive Specialty Ins. Co. (1991),72 Ohio App.3d 381, 387; Grismer Tire Co. Inc. v. Meridian Mut.Ins. Co. (Jan. 18, 1995), Montgomery App. No. CA 14688, unreported, at 2. Once the insurer receives notice of cancellation, coverage terminates irrespective of any further processing of the cancellation notice. Grismer Tire Co., Inc.
at 3. Therefore, Appellant MBI maintains Appellee Ruegg effectively terminated his policy of insurance even though Appellee Ruegg did not give advance written notice of cancellation and the "Cancellation Request/Policy Release Form" did not indicate when Appellee Ruegg signed the form.
Appellant MBI relies on three cases in support of this argument. In the Turner case, supra, a "Policy Cancellation Request Form" was signed on June 8, 1987, concerning a policy issued by Progressive Specialty Insurance Company ("Progressive"). Id. at 383. Typed on the cancellation form was a request that the insurance be canceled effective June 8, 1987 or sooner if possible. Id. Progressive received the cancellation request on June 18, 1987. Id. An accident involving the vehicle occurred on June 18, 1987. Id. On June 19, 1987, Progressive processed the policy cancellation form and canceled the policy retroactively to May 29, 1987. Id. On June 20, 1987, Progressive issued a check for the unearned premium. Id. As a result of the accident, plaintiffs sought coverage under their policy with Progressive.
Among other issues, plaintiffs argued on appeal that since the "Policy Cancellation Request Form" did not specify a future date, the request constituted a mere offer to change the terms of the policy which would not be effective until accepted in writing by Progressive and notice sent to them by Progressive.Id. at 387. The court of appeals disagreed and noted that "[s]everal cases hold that policies containing language that the insured may cancel by advising the insurer when thereafter the cancellation is to be effective are merely meant to forestall a retroactive notice of cancellation." Id., citingNobile v. Travelers Indemm. Co. (1958), 4 N.Y.2d 536, 540,176 N.Y.2d 585, 588, 152 N.E.2d 33, 35; State Farm Mut. Auto Ins.Co. v. Pederson (1974), 185 Va. 941, 951, 41 S.E.2d 64, 68;Kudrna v. Great Northern Ins. Co. (D.Mont. 1959),175 F. Supp. 783, 789. Based on the above law, the court held the plaintiffs' request for cancellation was effective despite their failure to state when at a future date the cancellation was to be effective. Id.
The court of appeals concluded the policy was in effect until June 19, 1987, when the cancellation request was processed by Progressive. Id. at 388. Therefore, Progressive's policy covered the accident even though the insured requested cancellation June 8, 1987, because the court found the policy canceled when Progressive processed the cancellation request and not when the agent received the cancellation request.
The next case Appellant MBI cites to is Cash v. MotoristsMut. Ins. Co. (Dec. 14, 1992), Butler App. No. CA92-05-089, unreported. In Cash, the insured telephoned her insurance agent and requested that a vehicle be removed from his insurance policy. Id. at 1. Five hours after the insured made the telephone call the vehicle was involved in an accident. Id. On appeal, the court of appeals recognized the general rule that "* * * the provisions in an insurance policy that notice shall be given to the insurance company and that the notice shall state the time the cancellation shall be effective merely serve to forestall a retroactive notice of cancellation and thus are for the benefit of the insurer." (Citations omitted.) Id. at 2. The court therefore concluded the telephone call was sufficient to cancel the coverage and the insurer was not required to provide written notice of the cancellation to the insured. Id.
at 3.
Appellant also relies on the Grismer case. In Grismer, the insured signed a policy of insurance with Cincinnati Insurance Company on February 19, 1992. Id. at 1. On March 2, 1992, the insured sent a letter to Meridian Insurance Company ("Meridian") requesting cancellation of the policy effective February 19, 1992. Id. Meridian received the letter requesting cancellation on March 6, 1992. Id. Meridian updated its main computer on March 13, 1992, with information that the Grismer policy was canceled as of February 19, 1992. Id. An accident occurred on March 14, 1992, the same day Meridian sent a letter to the insurance agency handling the Grismer policy, notifying them that the policy had been canceled. Id. at 1-2. The insured sought coverage as a result of the accident.
The court of appeals distinguished the Grismer case from theTurner case on the basis that Turner involved a "request" for cancellation which left the timing open for action by the insurer to choose the effective date of the cancellation. Id.
at 3. However, the court of appeals determined, in Grismer,
that the insured's letter notified Meridian that the policy was canceled unilaterally by the insured. Id. The court further stated:
 No action by the insurer can extend the effectiveness of a policy once it has been canceled by the insured, whether the cancellation is effective on the day it is mailed or the date it is received by the insurer. If the rule were otherwise, an insurer could effectively continue a canceled policy in effect and force the insured to continue to pay premiums thereunder. Such a result would be nonsense, since the insured has an absolute right to cancel an insurance policy.
The court concluded it did not need to decide the issue of whether an insurance policy cancellation is effective upon the date it is mailed or the date it is received by the insurer, since both dates were before the accident. Id.
We find the Turner case controlling in this matter. The Cash
and Grismer cases are unreported opinions. S.Ct.R.Rep.Op. 2(G)(2) provides that "* * * each unofficially published opinion or unpublished opinion shall be considered persuasive authority on a court, including the deciding court, in the judicial district in which the opinion was rendered." However, "[o]pinions reported in the Ohio Official Reports, * * *, shall be considered controlling authority for all purposes in the judicial district in which they were rendered * * *." Although under the Supreme Court Rules for Reporting Opinions none of the cases are controlling on this court, we find that since theTurner case is a published opinion, it is more persuasive than the unpublished opinions of Cash and Grismer. Therefore, theCash and Grismer decisions are not controlling authority which this court must follow.
Thus, in applying the rationale of Turner, we find Appellant MBI did not cancel Appellee Ruegg's policy of insurance before the accident of July 12, 1996. Cherie Thomas testified to the following concerning the cancellation procedure in June of 1996:
 Q. And you were sending it to the bank for their signature?
A. Yes.
Q. Why did you need the bank's signature?
A. Because Great Lakes told me I did.
Q. What did they tell you about that?
 A. When there is a loss payee listed on the policy that they have to sign off on the policy before it can be canceled.
 Q. All right. And did they tell you that the policy could not be canceled until the loss payee signed off?
 A. He said they had to have that signed form in the office to process the cancellation.
 Q. Okay. And was that your understanding on all of the cancellation requests sent to Great Lakes General Agency where there was a loss payee?
A. Yes. Depo. Cherie Thomas at 14-15.
Further, Santina Principe, an employee of Great Lakes, also testified concerning the cancellation procedure:
 Q. Was it the procedure that the loss payee, was it the procedure that the cancellation request would not be processed until the loss payee signed a policy release?
 A. At that time, yes. The loss payee had to sign off that I would process, the insured and the loss payee had to sign off.
Q. They both had to sign off?
 A. Correct. Depo. Santina Principe at 10. See also Depo. Cherie Thomas at 32.
Testimony is also contained, in the record, that indicates that at the time of the accident, Appellant MBI was still processing Appellee Ruegg's cancellation request. Santina Principe testified to the following regarding the cancellation of Appellee Ruegg's policy:
 Q. And I take it that on 7-10 when you spoke with Leslie you did not take any action to process the cancellation request?
A. No.
 Q. And I take it that on 7-10 when you spoke with Leslie you did not take any action to process the cancellation request?
A. Correct.
 Q. And at any time up until 7-19 of '96 had you taken any action to process the cancellation request?
 A. The only action I took was to follow-up for the policy release. Depo. Santina Principe at 18.
In fact, the record supports the conclusion that Appellee Ruegg's cancellation request was not processed until November, 1997. Bank One, Dover, signed the policy release on November 4, 1997. Depo. Cherie Thomas at 21. Santina Principe admitted the cancellation request was not processed until November, 1997, and testified that she prepared the cancellation ticket on November 14, 1997. Depo. Santina Principe at 12, 30.
In addition to the deposition testimony that indicates the cancellation request had not been processed as of the date of the accident, a letter Cherie Thomas mailed Appellee Ruegg, on July 19, 1996, also indicates the insurance had not been canceled. The letter informed Appellee Ruegg that his "* * * cancellation request for the above referenced policy can not be enacted * * *." The letter further informed Appellee Ruegg that if he still wished to proceed with the policy cancellation, he would need to complete payment of the vehicle to Bank One, Dover.
Therefore, pursuant to Turner, if we apply the date Appellant MBI processed Appellee Ruegg's cancellation request, this date is beyond the date of the accident. In fact, Appellee Ruegg's policy expired on August 6, 1996, at the end of the policy term and after that date, it was irrelevant whether Bank One, Dover, signed the policy release. Accordingly, the trial court did not err when it determined Appellee Ruegg had coverage from Appellant MBI at the time of the accident. Nor did the trial court err when it concluded the cancellation was not effective because at the time of the accident, Appellant MBI had not finished processing the cancellation.
Appellees Northland, E.R. Trucking, Inc. and Eugene Ruegg argue, in response to Appellant MBI's First Assignment of Error, that appellant was required to give the PUCO a ten-day advance written notice of cancellation of Appellee Ruegg's insurance policy. The section of the Administrative Code at issue provides as follows:
 (A) Insurance and bond filed with the commission shall expire on the date written therein unless sooner canceled by not less than ten days' written notice to the commission by the insurance or bonding company. * * * The commission recognizes the expiration date written in the insurance or bond and notice from the insurance or bonding company is not required except when the insurance or bond is to be canceled short of the specified term or expiration date, in which latter event the commission requires not less than ten days' written notice of cancellation.
 (B) Notice of cancellation shall be given to the commission by the insurer in the form set forth by the commission. Ohio Adm. Code Section 4901:2-13-08.
Appellees argue that MBI failed to give written notice to the PUCO that Appellee Ruegg's insurance policy was going to be canceled and therefore, by law, the policy was not canceled until Appellant MBI filed the proper notice with the PUCO. At her deposition, Cherie Thomas discussed the ten-day notice requirement.
 A. I know that she told me that they had to have the signed form and if they couldn't have it that the policy would run out on the expiration date.
Q. Rather than being canceled short?
 A. Something about because they have to give ten-days notice, by the time they would get it anyway, it'd be August 6th. Depo. Cherie Thomas at 18-19.
As noted above, the policy was not canceled prior to its expiration on August 6, 1996. Therefore, the issue of whether Appellant MBI gave the required ten-day notice is moot. Accordingly, we find the trial court properly granted Appellee Northland's motion for summary judgment and properly denied Appellant MBI's motion for summary judgment.
Appellant's First Assignment of Error is overruled.
 II
In its Second Assignment of Error, Appellant MBI maintains the trial court erred when it awarded attorney fees to Appellee Northland. We disagree.
In support of this assignment of error, Appellant MBI argues the award of attorney fees was improper because under the case of Motorists Mut. Ins. Co. v. Brandenburg (1995), 72 Ohio St.3d 157, outside of an insured/insurer relationship, there must be a showing of bad faith before the trial court can award attorney fees.
A trial court's determination to grant or deny a request for attorney fees will not be disturbed absent an abuse of discretion. Id. at syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. It is based on this standard that we review Appellant MBI's Second Assignment of Error.
Under Ohio law, "* * * an award of attorney fees must be predicated on statutory authorization or upon a finding of conduct which amounts to bad faith." Brandenburg at 158. With respect to a declaratory judgment action, statutory authorization for an award of attorney fees is provided for in R.C. 2721.09. This statute provides:
 Whenever necessary or proper, further relief based on a declaratory judgment or decree previously granted may be given. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.
In Brandenburg, the court held that trial courts have the authority to award attorney fees based on a declaratory judgment issued by the trial court whenever said court finds that such an award is "necessary or proper." Kaiser Aluminum Chemical Corp. v. Home Ins. Co. (Aug. 26, 1996), Licking App. Nos. 95 CA 155, 95 CA 156, unreported, at 5 citing Brandenburg
at 159. "* * * [I]n determining whether an award of fees is 'necessary and proper,' the insurer's conduct is without any legal significance and it is of no consequence whether the insurer presented a legitimate issue regarding coverage." Id.
"R.C. 2721.09 * * * [places] no restriction on the trial court's discretion other than the award be 'necessary and proper.' Kaiser Aluminum Chemical Corp. at 5.
Based on our interpretation of Brandenburg, we do not find relief in the form of attorney fees, pursuant to R.C. 2721.09, is limited to insurance cases. The statute applies to any declaratory judgment action and applies to plaintiffs and defendants alike, whenever such relief is either "necessary or proper". Therefore, the trial court did not have to make a finding of bad faith before it awarded attorney's fees to Appellee Northland. It merely had to determine the fees were "necessary or proper". Based on the record in this matter, we find the trial court did not abuse its discretion when it awarded attorney fees to Appellee Northland.
Appellant's Second Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, P. J., Edwards, J., concurs.
Hoffman, J., concurs separately.
-------------------
-------------------
 ------------------- JUDGES
[1] [EDITORS' NOTE: FOOTNOTE 1 IS OMITTED FROM THE OFFICIAL COPY OF THIS DOCUMENT, THEREFORE IT IS NOT DISPLAYED IN THE ONLINE VERSION.]
[2] [EDITORS' NOTE: FOOTNOTE 2 IS OMITTED FROM THE OFFICIAL COPY OF THIS DOCUMENT, THEREFORE IT IS NOT DISPLAYED IN THE ONLINE VERSION.]
HOFFMAN, J., CONCURRING
 I concur in the majority's analysis and disposition of both appellant's assignments of error. I write separately only to note I find appellant's failure to provide written notice to PUCO provides a separate, independent basis to affirm the trial court's decision.
 ------------------------ JUDGE WILLIAM B. HOFFMAN
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.
------------------
------------------
 ------------------ JUDGES